# Williams *versus* County of Northumberland.

1. The fees and mileage of witnesses called and examined on behalf of the defendants in trials for felony cannot be recovered by such witnesses from the county.

2. The Act of May 11th, 1874, (P. L. 132), which provides that, " in all cases

[Williams v. Northumberland Co.]

of conviction of any felony, all costs shall be paid forthwith by the county, unless the party convicted shall pay the same," does not include such witness fees and mileage.

April 29th, 1885.  Before MERCUR, C. J., GORDON, PAXSON, STERRETT, GREEN and CLARK, JJ.  TRUNKEY, J., absent.

ERROR to the Court of Common Pleas of *Northumberland county :* Of July Term 1885, No. 31.

Case stated, wherein John Williams was plaintiff, and the county of Northumberland defendant, as follows :—

First.—That one William Mosley was duly and regularly tried and convicted of murder in the second degree, at the May Term, A. D. 1883, of the Court of Oyer and Terminer of the said county of Northumberland.  [The prisoner was sentenced.]

Second.—That the said county of Northumberland paid the costs of prosecution, and refused to pay the defendant's costs, or any part thereof, on demand made for the payment of the same.

Third.—That John Williams, the plaintiff, was a witness for the defendant (Mosley), duly subpœnaed and examined as a witness for the defence on the trial of said Mosley, and that his fees and mileage amounted to the sum of eighteen and $\frac{30}{100}$ dollars.

If the court be of the opinion that the county of Northumberland is liable for the payment of the defendant's witness costs, made in the trial of the said William Mosley, then judgment to be entered for the plaintiff in the sum of eighteen $\frac{30}{100}$ dollars.  But if not, then judgment to be entered for the defendant.  The costs to follow the judgment, and either party reserving the right to sue out a writ of error therein.

The court entered judgment for the defendant, in the following opinion by ROCKEFELLER, P. J.

The question in this case involves the construction of the Act of May 11th, 1874, P. L., 132, entitled, "An Act relating to payment of costs in cases of felony."  Section 1 enacts " that the costs of prosecution accruing on all bills of indictment charging a party with felony, ignored by the grand jury, shall be paid by the county; and in all cases of conviction of any felony, all costs shall be paid forthwith by the county, unless the party convicted shall pay the same; and in all cases in which the county pays the costs, it shall have power to levy and collect the same from the party convicted, as costs in similar cases are now collectible."  Section 2 enacts that " all laws or parts of laws inconsistent with the foregoing section, be and the same are hereby repealed."

14 OUTERBRIDGE—4

This is a case of conviction of a felony, and the plaintiff, who was a witness for the convicted party, contends that under the words " all costs " in the said Act, the county is liable to pay the defendant's costs.

There is no question better settled in Pennsylvania than that to recover from a county costs accrued in a criminal case it is necessary to show a statute obliging the county to pay, and when this cannot be done an action against the county must fall.     In construing the different Acts of Assembly now in force relating to costs in criminal proceedings, the courts have invariably referred to former Acts on the same subject, in order to determine the legislative intent.     At the common law a defendant never recovered costs.     On the contrary, by that law, as it stood in this state, on the 20th of March, 1797, a party, although acquitted, was liable to pay costs of prosecution as if he were convicted.     This was so understood by the Legislature at that time, as appears by the preamble to the Act passed on that day.     The first Act, however, generally cited, is the Act of 23d September, 1791.     That Act makes provision for costs in cases where upon examination the charge shall appear to be unfounded, and the words used are, " No costs shall be paid by such innocent person, but the same shall be chargeable to and paid out of the county stock by such city or county."

The Act of 1797, before cited, provides for the payment of costs by the county, in cases of acquittals of all indictable offences.     The words therein employed are, " all costs accruing on bills of indictment."     The Act of 28th March, 1814, provides that " in case of conviction in any Court of Oyer and Terminer, Quarter Sessions, or Mayor's Court, all costs shall be paid by the party convicted ; but where such party shall have been discharged according to law, without payment of costs, the same shall be paid by the county."     It is proper to state that the Act of 31st of March, 1860, which is a consolidation of former Acts, including those just cited, provides that " in all cases of conviction of any crime, all costs shall be paid by the party convicted ; but where such party shall have been discharged according to law, without payment of costs, the costs of *prosecution* shall be paid by the county."     The framers of the latter Act, it seems, were careful to include the costs of *prosecution* only, but I am not aware of any decision of any court where it was ever held that under the terms of any of the Acts of Assembly in force in this state at any time, making provision for the payment of costs by the county, in cases either of acquittal or conviction, where the words were, " no costs shall be paid by the defendant," or, " all costs accruing on bills of indictment . . . . . if such party be acquit-

ted," or, " all costs in all cases of conviction," where the party shall have been discharged according to law, the county was liable for the payment of the defendant's costs. On the other hand, the opposite has been expressly decided many times. The only instance in which it has been declared by the Legislature that " the defendant's bill for his subpœnas, serving the same, and attendance of his material and necessary witnesses shall be included in the costs," is where the petit jury shall acquit the defendant, and shall determine by their verdict that the prosecutor shall pay the costs. (Purdon, 391, pl. 66.)

It is plain that the Act of 1874, the one under consideration, does not repeal that part of the 64th section of the Act of 31st March, 1860, which provides for the payment of all costs in all cases of conviction of any crime by the party convicted, for by the terms of the former Act the costs are to be paid by the county, " unless the party convicted shall pay the same," and then the county is empowered to " levy and collect the same from the party convicted, as costs in similar cases are now collectible." It can scarcely be supposed that the Legislature intended that the county should pay the defendant's costs, and then turn round and levy and collect the same back from him.

The case of Huntingdon County v. The Commonwealth, 22 P. F. S., 80, was decided in 1872, in which it was held that " a county cannot be required to pay the costs of a defendant in cases of felony." That was the case of an acquittal, and not, as in this case, a case of conviction. The Act of 1874 had not been passed. The late Chief Justice THOMPSON, in delivering the opinion of the court, speaks very feelingly in regard to the hardship to poor witnesses for insolvent defendants, and said the Legislature ought to provide for such cases. Certainly witnesses and officers, particularly witnesses who are poor and sick, and far away from the county seat, have the sympathy of the courts. Cases of hardship are constantly occurring in this court. Witnesses are brought on attachments who on oath declare their poverty and utter inability to pay their expenses at or even on their way to court. " The remedy, however," says Chief Justice THOMPSON, in Huntingdon County v. Commonwealth, supra, and Justice STERRETT, in the case of Wayne County v. Waller, 9 Norris, 104, " if any is needed, rests with the Legislature, not in the courts."

It was so soon after the opinion of Chief Justice THOMPSON was delivered in the former case, that the Act of 1874 was passed, that I was at first inclined to think that the Legislature really intended to change the law so as to meet the difficulty; but on reflection I have concluded that such is not the

case. It would have been very easy to have said so in plain terms.

The 64th section of the Act of 1860, providing for the payment of the costs of prosecutions accruing on bills of indictment charging a party with felony, in case of acquittal by the county, is not changed. Previous to the Act of 1874 the county was not bound to pay costs in cases of conviction until "the party shall have been discharged according to law without payment of costs," and in my opinion the only change in the law the Legislature intended to make by that Act was in requiring the costs to be paid forthwith, instead of its being necessary for officers and the witnesses for the prosecution to wait (often several years) for their pay, until the party "shall have been discharged according to law."

In delivering the opinion of the court in the case of Wayne County *v.* Waller, supra, which case was decided in 1879, four years after the Act of 1874 was passed, Mr. Justice STERRETT says: "We are not aware of any law, common or statute, that required the county to pay a defendant's costs in a criminal case, or authorizes the court to call upon the county to advance money to be expended by a prisoner or his counsel in subpœnaing witnesses and otherwise preparing for trial." In the case of Crawford County *v.* Barr, 11 Norris, 359, the opinion was delivered by Mr. Justice TRUNKEY, who has evidently given much attention to the law of costs in criminal cases, (Com. *v.* Curren, 9 Phila. Reports, 623,) makes no mention of the Act of 1874.

Doubtless a law requiring the public to pay the defendant's costs in all cases of acquittal, or in the first instance in all cases of conviction of any felony, would be burdensome to the tax payers. In more than nine cases out of ten the criminal class are insolvent, and the costs could never be recovered back from them.

In counties like this, where there is so much criminal business, the question is a serious one. Thousands of dollars would be required annually Defendants would unnecessarily require sheriffs and officers to go all over the state to subpœna witnesses, and many of them would do it in order merely to get fees. Persons would get themselves subpœnaed by defendants merely to get their expenses paid whilst laying about the court. A law should be so passed as to guard against all imposition of the kind. It should apply only to meritorious cases. If a witness is well. and of sufficient ability, he should be compelled to look to the party who required his attendance. Only where he is too poor to attend court should the public pay the expense. Every person owes a duty to the Commonwealth, and it is on this ground that the

bringing of witnesses for a defendant without payment of fees, where the defendant is unable to pay them, is perhaps justified. The 9th section of the Declaration of Rights gives to the accused, in all criminal prosecutions, the right "to have compulsory process for obtaining witnesses in his behalf." In referring to this matter in the case of Wayne County v. Waller, supra, Judge STERRETT says, "the practice which has obtained, and so far as we know, is recognized in every criminal court, of awarding process and directing the service thereof, at the instance of parties accused of crime, rests upon this sufficient foundation; and no court will turn a deaf ear to the appeal of an impecunious prisoner who makes timely application for process to bring in his witnesses. It will always be awarded on proper application; the court will see that it is served, and compel the attendance of witnesses. As to the compensation of the clerk who issues, and the officer who serves the process, and the witnesses who obey it, that is another matter. They cannot be paid out of the public treasury unless statutory warrant can be found for so doing. In many cases this may be a great hardship, but the remedy, if any is needed, rests with the Legislature, not in the courts. As to the officers, such service must be regarded as an incident of official position. They take and hold office *cum onere.*

"The hardship is greatest on witnesses, especially those who are too poor to pay their own expenses while attending court, in obedience to its process in behalf of an insolvent prisoner. Until otherwise provided for, it must be set to the account of that service which every one at times owes to the government under which he lives and whose protection he enjoys." I have referred at length to this matter, not that it particularly concerns the question before the court, but to answer an inquiry often made at every session of the court. Officers do not know why they are required to serve subpœnas and attachments in criminal cases without pay unless they can get it of the defendant. The answer is, that this duty or burden is an incident of their office. The law required this when then took it. If persons are unwilling to perform the duties pertaining to the offices to which they ask to be elected, they must not ask for or accept them. As to witnesses, the law requires their attendance, and if the defendant is too poor to pay their fees, they must set it down to the duty they owe to the government that protects them in the enjoyment of all their rights, civil and religious. Every man is liable to become poor himself and he may at any time, even though innocent, be accused of crime before a court, and the right "to have compulsory process for obtaining witnesses in his behalf" is one of the rights government affords him for his protection.

[Montgomery Co. *v.* Bridge Co.]

Attorneys are officers of the court, and, like others, take their offices *cum onere.* One of these burthens, which custom has recognized, is the gratuitous service rendered to a poor prisoner, at the suggestion of the court.

Being of opinion that the county is not liable for the payment of the defendants' witness costs, judgment is entered for the defendant, the county.

The plaintiff took this writ of error, assigning for error the entering judgment for the defendant.

*Lewis Dewart* (with him *Voris Auten* and *W. B. Faust*), for the plaintiff in error.

*L. H. Kase*, for defendant in error, was stopped by the court.

The judgment of the court was delivered May 18th, 1885.

PER CURIAM: Witnesses cannot be paid out of the county treasury, unless so directed by Act of Assembly. Although this view may sometimes operate harshly on a witness, yet the remedy is with the Legislature. The learned judge interpreted the statute correctly. His opinion sustains the judgment.

Judgment affirmed.