## Commonwealth *v.* Green, Appellant.

Argued November 23, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Raymond Pace Alexander,* with him *Fred C. Gartner,* for appellant.

*Vincent P. McDevitt,* Assistant District Attorney, with him *John H. Maurer,* District Attorney, for appellee.

OPINION BY MR. JUSTICE DREW, January 4, 1943:

Appellant, Herbert Green, was indicted and tried for the murder of Josephine Cobb. The jury returned a verdict of guilty of murder in the first degree, and fixed the penalty at death. After his motion for a new trial

was refused, the learned court below entered judgment and pronounced sentence of death in accordance with the law. This appeal followed.

Appellant contends that a new trial should be granted because of the refusal of the learned trial judge to grant his motions, made prior to trial as well as thereafter, for the appointment of an inquest in lunacy to study his sanity, and for authority to employ a psychiatrist as an expert medical witness at the expense of the county.

Two days before the case was listed for trial, appellant's counsel filed an affidavit stating, inter alia, that appellant "had suddenly become irrational and violent", "mentally unbalanced" and "insane", and requested that the trial be postponed and an inquest in lunacy be had to determine his sanity, which requests were denied. The learned trial judge, however, immediately asked for a report as to appellant's mental condition from Doctor Baldi, the chief physician and superintendent of the county prison. He is an expert in dealing with men charged with crime, as well as a medical expert, and after examination he reported that appellant, previously normal in his conduct, had been found one morning in his cell in a tantrum, in which he tore up his mattress and threw himself about his cell, but that his actions soon returned to normal that day and had remained so ever since; that a neurological examination of appellant had resulted negatively, there being no evidence of hallucinations or illusional reactions that could be elicited; and that he believed appellant had feigned insanity. When the case was called for trial, appellant's counsel again moved to continue the case and for the grant of an inquest in lunacy. The trial judge, after referring to the report of Doctor Baldi, overruled the motions and directed the trial to proceed. Appellant also complains of the refusal of his motion, made at the time of trial, for the appointment of a psychiatrist to examine him and testify in his behalf at the cost of the county. His counsel repeated these motions at the time of sen-

tence, alleging appellant had suffered a mental collapse during the trial of a case, heard subsequently to the one here being reviewed, in which he was co-defendant to another charge of murder in the first degree, and in which he pleaded guilty. These motions were also refused.

This killing occurred during the perpetration of a robbery and was particularly atrocious in its brutality and callousness. Commission of the crime by the appellant was conclusively proven by uncontraverted oral testimony and by two signed confessions of the accused. There can be no possible doubt of his guilt. He offered no testimony to contradict the case of the Commonwealth, and does not now allege any errors committed in the trial of the case. In refusing his motions, the learned trial court, having referred to the report of Doctor Baldi, said that at the trial appellant "showed intelligence and understanding. He paid attention to what was going on, and consulted and advised with his counsel during the examination of the jurors on their voir dire and of the witnesses who testified against him. His demeanor was that of a normal man, and in no way did he show lack of comprehension of the nature of the proceedings or that he was insane".

The granting of an inquest in lunacy under the common law [1] rests within the discretion of the trial judge: [2] *Commonwealth v. Scovern*, 292 Pa. 26; *Webber v. Commonwealth*, 119 Pa. 223. The following language of Mr. Justice KEPHART in the *Scovern* case is particularly

---

[1] The Act of July 11, 1923, P. L. 998, known as The Mental Health Act, as amended by the Act of May 28, 1937, P. L. 973, is not involved for, under section 308 thereof, only the officers in charge of the institution where the prisoner is being detained are proper persons to make such an application: *Commonwealth v. Barnes*, 280 Pa. 351. In the instant case the officer in charge expressly refused to make an application for a lunacy commission on the ground that the prisoner was not insane.

[2] The Act of May 2, 1933, P. L. 224, providing, inter alia, for the appointment of psychiatrists to examine defendants after conviction likewise leaves such appointment to the discretion of the trial judge.

applicable to the facts here before us (p. 33) : "The trial judge is not compelled to grant an inquest in all cases, nor did he abuse his discretion in refusing the petition for the appointment of a commission in this case. He observed the prisoner in the court room, made an investigation of his mental state, received reports from the jail warden, and an alienist, and those having defendant in charge, and found . . . the 'conduct of the defendant . . . showing nothing more than that he was of mean disposition and ever sought to impose his will upon those with whom he came in contact'." Were the rule otherwise, persons accused of murder would have it in their power by subterfuge to delay the course of justice at their whim and to subject the public to all manner of unnecessary expense for the conduct of their defense. We are all satisfied that in the case at bar there was no valid ground to suppose even the possibility of appellant's insanity, and that the allowance requested would have been useless waste of time and money. From the record in the present case it is apparent that appellant was not insane at or after his trial, that he was fully capable of defending himself, and that therefore there was no abuse of discretion in refusing the application for the granting of an inquest in lunacy.

The only other contention of appellant is the refusal by the court below to appoint a psychiatrist at the expense of the county to examine him for the purpose of testifying in his behalf. It is well settled in this Commonwealth that the cost of witnesses, expert or otherwise, cannot be assessed against the county in the absence of express statutory authorization: *Wayne County v. Waller,* 90 Pa. 99; *Huntingdon County v. Commonwealth,* 72 Pa. 80. Appellant contended that he was entitled to the services of experts as witnesses at the expense of the county under the Act of March 22, 1907, P. L. 31, which provides for the appointment of counsel for indigent persons accused of murder and allows "such counsel all personal and incidental expenses." With this

contention we do not agree, any possible inference to the contrary in *Commonwealth v. Tauza,* 300 Pa. 375, notwithstanding. Prior to the passage of that statute, services of counsel were rendered gratuitously, according to the duty which members of the bar owed to the court and to the public: *Com. v. Henderson,* 113 Pa. Superior Ct. 348; *Commonwealth v. Darmska,* 35 Pa. Superior Ct. 580. The statute was enacted in order to provide court-appointed counsel compensation for their services in aiding indigent persons accused of murder and reimbursement for such counsel's incidental and personal expenses such as for their own necessary travel, telegrams, meals, messenger service, and the like. This did not permit counsel the expense of costs of appeal including printing of paper books, however, and the Act of June 3, 1911, P. L. 627, was passed for that purpose. See *Commonwealth v. Wormsley,* 294 Pa. 495. The Act of 1907 does not make allowance for assessment against the county for costs of obtaining expert witnesses for indigent defendants accused of murder. See Sadler, Criminal Procedure in Pennsylvania (2d ed.), Vol. 2, Par. 537, p. 609; *Commonwealth v. Briscoe,* 18 D. & C. 615; *Commonwealth v. Arcidiaco,* 3 D. & C. 448; *Commonwealth v. Smith,* 24 Dist. 711; *Commonwealth v. Shults,* 18 Dist. 1002; *Commonwealth v. Kieronska,* 18 Dist. 177; *Commonwealth v. Endrukat,* 17 Dist. 1049.

The appellant received a fair trial, he admitted his guilt of a particularly cruel and brutal murder done in the commission of a robbery, and there is not the slightest doubt that he was fully conscious of the gravity of his act. All the elements of first degree murder are present in the case, and the penalty of death was fully warranted.

The assignments of error are all overruled, the judgment is affirmed, and the record is remitted for the purpose of execution.