## Commonwealth v. Dunn

*Bryan A. Hermes,* for petitioner.

*John A. Boyle,* first assistant district attorney, and *David J. Smyth,* contra.

SLOANE, J., June 4, 1943.—This petition is for the appointment by me of two qualified physicians or a commission (two qualified physicians and an attorney) to inquire into the mental condition of Sydney B. Dunn, now confined in the Philadelphia County Prison on the charge of aggravated assault and battery with intent to kill. The petition is subscribed and filed by his mother, Dora Dunn, under section 308 of The Mental Health Act of July 11, 1923, P. L. 998, as amended, 50 PS §48.

She says in it that she "believes and therefore avers that the said prisoner is in such condition as to make it necessary that he be cared for in a hospital for mental diseases"; and prays "the court to order an inquiry into the prisoner's condition either by two qualified physicians or by a commission in the discretion of the court."

The Commonwealth moves to quash the petition, that is, to set it aside, on the basis that the prisoner's mother "is not a person authorized by law to make application for the commitment to a hospital for mental diseases of said Sydney B. Dunn, a prisoner."

There are always two separate sides to the question of mental unsoundness in an accused. One is his mental and therefore his legal responsibility at the time of his misconduct, and the other is his mental condition when he is brought to account for his crime in the courts. Those phases have been recognized by our Commonwealth at least as far back as 1860, because under section 66 of the Criminal Procedure Act of March 31, 1860, P. L. 427:

"In every case in which it shall be given in evidence upon the trial of any person charged with any crime or misdemeanor, that such person was insane at the

time of the commission of such offence, and he shall be acquitted, the jury shall be required to find specially whether such person was insane at the time of the commission of such offence, and to declare whether he was acquitted by them on the ground of such insanity . . ." And, under section 67: "The same proceedings may be had if any person indicted for an offence shall, upon arraignment, be found to be a lunatic, by a jury lawfully empanelled for the purpose, or if, upon the trial of any person so indicted, such person shall appear to the jury, charged with such indictment, to be a lunatic, the court shall direct such finding to be recorded, and may proceed as aforesaid."

So that as I say—in our own Commonwealth the two sides of the mental unsoundness question were recognized, namely, one at the time of the commission of the offense, and the other at the time of arraignment if he be found to be a lunatic. We take it that this petition inquires into his mental condition now. If it were the first side, then it would be a question of pleading not guilty on the ground of insanity, a plea to be made at the arraignment of the prisoner as a preliminary step before trial; though we understand the intention here is, when arraigned, to plead the prisoner not guilty because of insanity which, if so, would support a contention that he was not mentally responsible to himself and therefore to society, and the punishing sequence it imposes, when the alleged crime was done. (See Commonwealth v. Iacobino, 319 Pa. 65, 70 (1935): ". . . insanity constitutes a complete defense of the crime charged or none at all . . .")

But whichever way you look at it, petitioner here is the mother of the prisoner. Under section 308 of The Mental Health Act [1] the petitioner can be "the super-

---

[1] Our Mental Health Act was designed, with purpose similar to progressive legislation in other jurisdictions, to provide adequate machinery for the examination and commitment of mentally ill persons, including those charged with and held for crime. See, for

intendent [of the prison], jail physician, . . . other chief executive officer of the institution or other responsible person". No one of these is the petitioner here. Counsel would argue that the words "or other person" could and do include the mother of the prisoner, but we will not mull over that argument. We need not because our Supreme Court has spoken to the very point.

". . . under section 308 . . . only the officers in charge of the institution where the prisoner is being detained are proper persons to make such an application: *Commonwealth v. Barnes*, 280 Pa. 351."

This is a statement by Mr. Justice Drew in Commonwealth v. Green, 346 Pa. 172, 174, note 1.[2] It is true, as argued by counsel, that The Mental Health Act was not involved in the Green case, but what Mr. Justice Drew said is a direct statement and a reaffirmance of a holding in the Barnes case, and I am not free to disregard it. At any rate, if it be a holding, I am bound. If it be a dictum, I am persuaded. My persuasion is aided by the observation that I make—that it would appear that the legislature was of the sense that those in charge of the accused were in a better way to determine whether insanity is a question and should be inquired into when others who could do so failed to take action sooner. Certain it is that the legislature, if it so desired, could have included a relative or friend as the proper applicant. It did so in the very previous

a discussion and citation of other statutory procedures for testing insanity of an accused preliminarily, Weihofen, Insanity as a Defense in Criminal Law (1933) ch. VII, (note) The Routine Mental Examination of Criminal Defendants in Advance of Trial; The Briggs Law of Massachusetts (1936), 16 Boston Univ. L. Rev. 204; Insanity as Preventing Trial, 14 Canadian Bar Rev. 160 (1936); Parker, The Determination of Insanity in Criminal Cases, 26 Cornell Law Quarterly 375 (1941); Code of Criminal Procedure (American Law Institute, 1931) §§307-9, and commentaries thereto.

[2] The instant case and the Green case are at one in the respect that in both Dr. Baldi, superintendent of the county prison, "expressly refused to make an application for a lunacy commission on the ground that the prisoner was not insane."

section of the same act, section 307. Petitioner therefore lacks statutory authority.

Nor is she here with other authority. We cannot help her even were we to consider her petition as one at common law, as asked by counsel.

"The granting of an inquest in lunacy under the common law rests within the discretion of the *trial* judge . . .": Commonwealth v. Green, supra, p. 174 (italics supplied).

His is the sound discretion, and his is the conscience to be informed: Webber v. Commonwealth, 119 Pa. 223, 237, 238 (1888).

"There must be reasonable grounds on which to base an inquiry as to insanity, and a method of ascertaining the fact. At common law, when the question of defendant's sanity at the time of trial was raised in any case, the preliminary question was for the trial judge within his legal discretion; the court, believing doubt exists, may order the fact to be tried by a special jury impaneled for that purpose, or by the jury which is to try the indictment . . .": Commonwealth v. Scovern, 292 Pa. 26, 29 (1927).

And now with the Act of 1923, he may have a commission appointed under section 308. He apparently has a choice of method.[3]

There is no doubt that an insane person, though sane when he committed a wrong act, cannot be tried because a person who is unable to comprehend his position to make a rational defense cannot be tried on a criminal charge while in that condition: Commonwealth v. Cilione, 293 Pa. 208, 214 (1928).

---

[3] The determination of insanity by a lay jury has been criticized, and the modern legislation gives the court power to appoint a commission composed of qualified persons to determine the mental condition of the accused. That is the effect of section 308 of The Mental Health Act in the situations that it covers. See Weihofen, supra, p. 426; Tulin, The Problem of Mental Disorder in Crime: A Survey, 32 Columbia L. Rev. (1932), 933, 952.

"If a man in his sound memory commits a capital offence, and before arraignment for it becomes mad, he ought not to be arraigned for it, because he is not able to plead to it with that advice and caution that he ought": Sharswood's Blackstone's Commentaries, book IV, p. 24.

"The proposition that a person admittedly insane cannot legally be tried is so sanctioned by common sense that it needs the citation of no formal authorities for its support. Such authorities are numerous and in complete accord." So spoke Mr. Chief Justice Maxey in Commonwealth v. Ragone, 317 Pa. 113, 124 (1935).

The reason does not come from the fact that "a madman is only punished by his madness." That phrase is graphic but inadequate. It is the "defect of understanding" that is recognized as the incapacity basis for not trying a man. See Commonwealth v. Cilione, supra, Weihofen, Insanity as a Defense in Criminal Law (1933), p. 333 et seq., and Sharswood's Blackstone's Commentaries, book IV, p. 395.

The prisoner is entitled to his rights, but procedure is not unimportant, both in life and in law, and, at this stage of the proceedings, under this petition, I find myself without authority to act. I must accordingly sustain the Commonwealth's motion to quash or set aside the petition. This is done without prejudice to his right either to enter a plea of not guilty by reason of insanity, or to petition for a commission before the trial judge at the time of the arraignment, or at other proper time.

The motion to quash is granted.