Commonwealth ex rel. Chalfonte *v.* Smith, Warden.

PER CURIAM, December 9, 1943:

Bearing in mind that a petition for writ of habeas corpus is not a substitute for an appeal, we limit ourselves to a consideration of the two fundamental rights petitioner alleges were denied him: (1) a request that competent counsel be furnished him was denied; (2)

he was denied the right to compulsory process for witnesses.

Relator was tried before Judge HARRY S. McDEVITT on eleven indictments, Nos. 20 to 29 (inclusive) November Sessions 1937 and No. 421 May Sessions 1932, and found guilty on all of them. He was sentenced on Nos. 20, 21 and 22 November Sessions 1937 (which charged robbery, while armed with an offensive weapon, and assault, while armed with an offensive weapon, with intent to rob) to imprisonment in the Eastern State Penitentiary for not less than ten years nor more than twenty years on each indictment, the sentences to run consecutively. The severity of the sentences was due, no doubt, to the defendant's long criminal record, of which the judge had knowledge. It ran back to 1913 and included convictions for larceny, felonious entry, robbery, highway robbery and other acts of violence, for which he had served time in prisons in this State, New York and New Jersey, a total of twenty-four years, more than half his age at that time. Detainers were lodged against him from six other prison authorities, from which he had been released on parole. No sentence was imposed on the remaining eight indictments, six of which involved minor offenses in connection with the three indictments beforementioned and with another one, No. 23, charging robbery, etc.

We have carefully examined the transcript of the testimony taken at the trial.[1] The evidence of guilt was overwhelming.

Because the petition and answer raised issues of fact, we granted the writ and conducted a hearing in the consultation room of the Court on Wednesday, November 10, 1943.

---

[1] The trial proceedings had been regularly recorded in shorthand by a court stenographer but as no motion for a new trial was made or appeal taken, the notes were not transcribed until the present proceedings were begun.

Relator was represented at the trial by Thomas E. Cogan, Esq., Chief Counsel of the Philadelphia Voluntary Defender Association. This Association is supported by private funds collected and distributed through the Community Fund. It employs a staff of competent lawyers and investigators. Mr. Cogan is known to the members of this court as a competent lawyer. The record indicated that he was appointed by the court on the morning of the trial. Without more, this might raise an inference that relator was forced on trial without adequate opportunity to prepare. But Harry W. Steinbrook, Esq., who was, at the time, First Assistant Voluntary Defender, testified that three days before the trial he had interviewed relator at Moyamensing Prison, that he had discussed in detail the nature of the charges against him and the matters dealing with the necessary preparation for trial, that he had made rather copious notes (which he used to refresh his recollection), and that, among other things, he had asked relator whether he had any witnesses he wanted notified, and relator had answered, "No". We also know Mr. Steinbrook to be a competent and conscientious lawyer. We are satisfied that if the interview with relator had revealed to him the names of any witnesses he wanted called and their usefulness to him, they would have been subpoenaed. What happened was that (as indicated by the records of the Defender), on the morning of the trial, Mr. Cogan informed the court that, because of relator's extensive criminal record, he did not think it was a proper case for the Voluntary. Defender Association to handle and, in order to relieve the Association of any responsibility, the judge, asserting his right to appoint any member of the bar, directed Mr. Cogan to defend him, which he did.

Following the appointment, relator apparently requested Mr. Cogan to ask the judge for a continuance. Mr. Cogan declined, but suggested that relator himself make the request. It is easy to see why. Based upon

his information, Mr. Cogan's request for a continuance for the purpose of procuring available witnesses, at a future date, would not have been made with "all good fidelity to the court". The request was made by relator; he told us, "Judge McDevitt asked me if I had something to say before the trial started and I told him yes. I stood up and I said, 'May it please the court, may I ask for a postponement of this trial, a delay'—in fact, the exact words were 'a delay'—'so my witnesses could be summoned'. Judge McDevitt immediately said, 'You had plenty of time to get your witnesses. The trial starts right away.' "

He admits that at the time this motion was made he did not mention the names of any of the witnesses he desired to summon, but he did state in the hearing before us that while he was on the witness stand he repeated his request and named the witnesses. The transcript of the testimony, which indicates that the names of no witnesses were mentioned by him after the trial commenced, refutes this statement.

Rule No. 19 of the Rules of the Court of Quarter Sessions of Philadelphia County provides: "Subpoenas for witnesses residing within the County of Philadelphia shall be taken at least one day previous to the day assigned for the trial of the case in which their attendance shall be required. The trial will not be continued on account of the absence of any witness if he might have been found at his residence within that period."

The rule is a reasonable one. In our opinion, where, as here, a defendant is represented by competent counsel, compliance with it is necessary unless the failure is supported by an adequate excuse. Compliance certainly involves a showing that proper and timely attempts were made to subpoena the witnesses and that they could not be found at their residences within the required period. And *timely* application must be made to the court by an impecunious prisoner for process to

bring in his witnesses, naming them: *Wayne Co. v. Waller*, 90 Pa. 99, 104; *Williams v. Northumberland Co.*, 110 Pa. 48, 53, 20 A. 405. Relator was in custody fifteen days before his trial on November 5, 1937. He is not entitled to the extraordinary relief which he now seeks where, having had ample opportunity, he failed not only to advise his counsel of available witnesses, but also to make timely application to the court for compulsory process to bring in any named witnesses. And we would take this view even if we were now satisfied that the witnesses might have helped in his defense.

But we are not so satisfied. Relator stated that, at a regular "line-up", he was confronted by seventeen or eighteen people who were unable to identify him as "being the man that did it." But Judge McDEVITT described the routine. His description completely negatives the notion that any of them would have helped relator. He said:

"So far as the seventeen witnesses are concerned, they are the customary victims of holdups, who are always brought to the Detective Bureau and asked whether they can identify a man who has been arrested for a crime similar to the one in which they were involved. Every one who had been held up in the neighborhood of West Philadelphia at that time, just prior to his arrest, was brought to the station house and asked to look at him, and they never stand them up alone, they always stand them up with two or three others, so that a man cannot walk in and say, 'Yes, that is the fellow', and if he was visited by seventeen, they are the seventeen."

It is evident that these persons were referring to their own holdups or robberies, not to the robberies for which relator was being tried.

At the trial the identification of relator by the victims of all three holdups was unequivocal. In one case he admitted his presence at the scene of the alleged holdup. In another his identity was corroborated by a wit-

566

ness other than the victim. And in the third the victim not only identified relator, but also identified the four watches found on relator's person when he was arrested.

Moreover, the suggestion made by relator at the trial that there were witnesses who could have furnished him with an alibi was clearly an afterthought. His assertion was that at the time the hold-ups were committed he was doing some shopping in several stores in downtown Philadelphia some distance from the scenes of the crimes, and that the clerk or proprietor of the stores where he made the purchases could have identified him and so testified. If there were any truth in the assertion, it is inconceivable he would not have mentioned the fact to Mr. Steinbrook. And it is extremely doubtful, particularly in view of the strength of the evidence against him, that the witnesses could have identified him and fixed the time with sufficient certainty to raise any doubt about his guilt.

The writ is dismissed, the discharge is refused and the relator is remanded to the custody of the warden.