## Commonwealth *v.* Johnson, Appellant.

Argued November 15, 1962. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

*Paul Leo McSorley,* with him *John E. Walsh, Jr.,* for appellant.

*James L. Stern,* Deputy City Solicitor, with him *David Berger,* City Solicitor, for City of Philadelphia, appellee.

*Martin Vinikoor,* Secretary, *William J. Woolston,* Vice-Chairman, and *Paul M. Chalfin,* Chairman, for Philadelphia Bar Association Committee on Criminal Justice and Law Enforcement, as amicus curiae.

OPINION BY MR. CHIEF JUSTICE BELL, January 22, 1963:

The appellants are counsel who were appointed by the Court of Oyer and Terminer of Philadelphia County to represent Johnson, an indigent defendant indicted for murder.

Johnson was indicted for murder in May, 1958. After presentation to that Court of his affidavit that he was destitute of means to employ counsel and prepare for his defense, the Judge sitting in the Court of Oyer and Terminer to whom the affidavit was presented, appointed the appellants to represent Johnson. Appellants' services included the following:

Appellants prepared Johnson's case and tried it in May, 1959, the trial commencing May 7 and ending May 15. The jury found Johnson guilty of murder in the first degree and fixed the penalty at life imprisonment. On June 10, 1959 the trial Judge entered an Order directing the payment of a $500 counsel fee to each of these appellants. This was the maximum counsel fee allowable. Thereafter, appellants prepared and

argued motions for arrest of judgment and for a new trial. These motions were dismissed by the Court en banc on June 28, 1960, at which time sentence was imposed upon Johnson in accordance with the verdict of the jury.

Appellants (representing Johnson) thereafter appealed to this Court which, on January 19, 1961, ordered a new trial: *Commonwealth v. Johnson,* 402 Pa. 479, 167 A. 2d 511.

Johnson was retried on September 18, 1961 and these appellants again prepared his case. Johnson pleaded not guilty, but after four jurors had been selected, changed his plea to guilty. After hearing testimony Judge CARROLL, the trial Judge, found defendant guilty of murder in the second degree.

Thereafter, on September 25, 1961, these appellants filed another petition requesting payment of an additional counsel fee of $500 to each of them for services rendered to Johnson in connection with his new trial. On March 19, 1962, Judge CARROLL dismissed the petition; this appeal followed.

There is not the slightest doubt that the fee of $500 for all the services rendered by each counsel was *very inadequate* if payable by a person of means, but it must be recalled that these services must be paid for by the County—in this case, the City—and the Court's power to fix compensation in this case is authorized and limited by the Act of March 22, 1907, as amended by the Act of April 6, 1949, P. L. 406, and as further amended by the Act of November 10, 1959, P. L. 1401.*

Prior to March 22, 1907, while counsel for indigent persons accused of murder was often appointed by a Court, such counsel served without compensation and had no constitutional or statutory or common law

---

* This Act was further amended by the Act of April 28, 1961, P. L. 145.

right to compensation out of the County or State treasury. Such counsel served gratuitously because motivated by human sympathy and an appropriate sense of professional obligation. It took a statute to change the common law in this respect so as to compel the County to pay the compensation and any expenses of counsel for an indigent person accused of murder: *Wayne County v. Waller*, 90 Pa. 99;[*] *Commonwealth v. Thompson*, 367 Pa. 102, 79 A. 2d 401.

The law prior to 1907 was well summarized in the syllabus of *Wayne County v. Waller*, supra: "1. Where counsel are assigned by a court to defend a pauper criminal, the county wherein the trial is had is not bound to pay their fees, nor even the expenses incurred in the preparation and course of the trial. One of the incidents of the office of counsel, who is an officer of the court, is to defend such prisoners gratuitously."

This Court said in *Commonwealth v. Thompson*, 367 Pa., supra (page 106): "The constitutional right of the accused to be represented by counsel gives him the right to choose, at his own cost and expense, any lawyer that he may desire. When, however, he is unable to do so or is destitute or without means to employ counsel of his own choosing, the court will ap-

---

[*] Accord: *Commonwealth v. Henderson*, 113 Pa. Superior Ct. 348, 350, 173 A. 868. In that case the defendant was charged with a misdemeanor. Apparently because she was impecunious the Court appointed counsel. It was here held that the County was not liable for the $25 the Court had stated counsel was to be paid.

No liability for witness fees: *Huntingdon County v. Commonwealth*, 72 Pa. 80; *Williams v. Northumberland County*, 110 Pa. 48, 20 A. 405; *Commonwealth v. Feralio*, 47 Pa. D. & C. 371.

Nor for expert testimony (Psychiatrists): *Commonwealth v. Green*, 346 Pa. 172, 29 A. 2d 491; *Commonwealth ex rel. Smith v. Ashe*, 364 Pa. 93, 110, 71 A. 2d 107.

Costs on successful appeal to this Court cannot be taxed or recovered: *Commonwealth v. Garramone*, 115 Pa. Superior Ct. 588, 590, 176 A. 263.

point counsel for him whose *statutory** compensation and personal expenses are payable by the county. The custom of the court to assign counsel in capital cases is an ancient one and was provided for by the law of this State long before the adoption of its present Constitution or of the 14th Amendment to the Federal Constitution: See Act of May 31, 1718, 1 Sm. L. 105, §4, 19 P.S. §783; and see the late Chief Justice MAXEY'S opinion in Commonwealth ex rel. McGlinn v. Smith, 344 Pa. 41, at page 45, 24 A. 2d 1, and footnotes thereto. In those early days it was deemed a proud service of the bar to accept such assignments as counsel from the court without compensation. It was not until 1907 that compensation and certain expenses were provided for: Act of March 22, 1907, . . . The amount of compensation then fixed has been substantially increased by the more recent Act of April 6, 1949, . . ."

The Act of March 22, 1907, as amended by the Act of April 6, 1949 provides that when a person indicted for murder shall file an affidavit setting forth that he is "wholly destitute of means to employ counsel and prepare for his . . . defense, the judge sitting in the court of oyer and terminer, to whom such affidavit is presented, shall assign to such person counsel, not exceeding two, to *represent* and defend such person at the trial of the case; and when services are rendered by counsel, in pursuance of such assignment, the judge sitting at the trial of the case may allow such counsel all personal and incidental expenses . . . and also reasonable compensation for services rendered, not exceeding five hundred dollars for each counsel; which allowance of expenses and compensation shall be a charge upon the county in which the indictment in the action is found, . . . upon the certificate of the judge presiding at the trial of the case. . . ." This compensation

---

* Italics throughout, ours.

is payable by the County provided counsel file an affidavit that he has not directly or indirectly received nor entered into a contract to receive any compensation from any other source.

Counsel contend that the $500 counsel fee aforesaid applies only to a first trial, and impliedly authorizes an additional $500 for services rendered at or in connection with a retrial. The statute provides, as above recited, for reasonable compensation for services rendered by each counsel, not exceeding $500 for each. Counsel would limit the statutory language and the statutory fee to *each trial,* although the statute does not and should not restrict counsel's fee for his services merely at the *actual trial* of the case. The Legislature knew as everyone knows, that counsel (a) must prepare his client's case in advance of actual trial, and (b) that he must conduct the actual trial, and (c) that if the client is convicted it is customary for counsel to file and orally argue (as well as to prepare briefs to support the oral argument) a motion for a new trial and/or for arrest of judgment and perhaps other miscellaneous motions, and thereafter if advisable (d) to take an appeal to this Court and to prepare the necessary record and brief and to orally argue the appeal.

If the Act were interpreted as appellants desire, counsel could *logically* claim a counsel fee of $500 not only for the *actual trial* of the case, but also $500 for preparation of the case (since literally and technically this is not *a trial*) and similarly $500 for briefing and argument before the lower Court, and $500 for briefing and argument before this Court. We cannot agree with this contention.

Considering the historical background of compensation for counsel for indigent defendants (indicted for murder) and the fact that the costs are payable by the County out of the County treasury—considering especially the language and the objective of the

Act—we regretfully hold that the maximum fee for each counsel is $500 and that such fee includes the preparation of the case, the trial of the case, subsequent motions, briefs and oral arguments before the lower Court, as well as an appeal (if necessary) to this Court, preparation of the record and briefs and an oral argument before this Court, as well as similar services at a second trial.*

Order affirmed.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Harold Johnson was indicted for murder. The Court of Oyer and Terminer of Philadelphia County, appointed two attorneys to defend him. The trial came on before Judge GRIFFITHS and a jury and ended in a verdict of first degree murder with the penalty fixed at life imprisonment. The court-appointed lawyers appealed to this Court which unanimously reversed the conviction and ordered a new trial. (*Commonwealth v. Johnson,* 402 Pa. 479.) The defense attorneys prepared for the second trial. This time the case came before Judge CARROLL. After the fourth juror had been selected, the defendant changed his plea

---

* The City of Philadelphia filed a brief which opposed payment of more than a $500 fee. The Philadelphia Bar Association through its Board of Governors filed a brief as amicus curiae in which it supported the position and claim of counsel. However, it added that it was confident that members of the Association would always serve as counsel for indigent defendants charged with murder "when appointed by the Courts . . . without regard to the adequacy *or even existence* of compensation."

We are convinced that the Act of 1907, as amended, should be further amended by the Legislature to increase the permissible maximum counsel fees, as well as to permit the Court to allow additional counsel fees payable by the County for services in connection with a new trial and/or additional new trials.

from not guilty to guilty, and Judge CARROLL fixed the degree of crime at second degree murder.

At the ending of the first trial the attorneys were paid $500 each, in accordance with the Act of March 22, 1907 (amended by the Act of April 6, 1949). After the termination of the second trial they petitioned the court for compensation based on their services at the second trial. Judge CARROLL refused the petition and the attorneys appealed to this Court.

The majority of this Court, while expressing sympathy for the lawyers and indicating that in justice they should receive additional compensation for additional service, believes that, under the Acts of 1907 and 1949, supra, only one compensation is permissible, no matter how many trials are involved. I do not so read the statutes.

The Act of 1949 states: "When services are rendered by counsel, in pursuance of such assignment, the judge sitting at the *trial* of the case may allow such counsel all personal and incidental expenses, upon a sworn statement thereof being filed with the clerk of the court of quarter sessions, and also reasonable compensation for services rendered, not exceeding five hundred dollars for each counsel."[1]

President Judge CARROLL, in refusing compensation for the second trial, said that the Act "provides an absolute maximum which may be awarded to counsel *irrespective of the services rendered.*"

There is absolutely nothing in the Act to justify such a statement. The Act says that a lawyer shall receive not more than $500 for the services rendered at a TRIAL, not trial*s*.

Statutes are to be construed reasonably[2] and it is not reasonable to suppose that the Legislature intended

---

[1] All emphasis mine.

[2] Statutory Construction Act of May 28, 1937.

so absurd a result that counsel should not be paid for services rendered at a second trial, although authorizing payment for a first trial.

If the defense attorney is not to be paid for his work at the second trial, why should the district attorney be paid, or the judge, or the court clerk, or the court reporter or the tipstaff, for the services they render during the second trial? Why should the defense counsel be the only one to offer a sacrifice on the table of public benefaction?

Is the answer to this question: the State does not expect defense counsel to be as devoted to his client in the second trial as he was at the first trial? Such an answer would not be worthy of a government devoted to the public weal and particularly concerned about the lives of its citizens.

A trial is a trial. There is no difference between a second trial and a first trial. The second trial involves the same responsibility, the same work, worry and solicitude. The second trial is just as important as the first one. The fate of the defendant is as much in jeopardy at the second trial as at the first trial.

The burden carried by counsel in any murder case is a heavy and crushing one. The case occupies his thoughts night and day, it disturbs his rest, it robs him of sleep, it takes him away from other work. Five hundred dollars is a small enough sum for such an extraordinary expenditure of effort—for one trial. The first trial in the case at bar lasted eight days, but this is no indication of the hours and days devoted to the task by counsel in preparing for the trial, locating witnesses, interviewing them, readying exhibits. It does not include the time spent in preparing briefs and arguing the case before a court en banc, nor the day for the appearance in court when the defendant was sentenced, it does not take into account the enormous amount of time consumed in preparing briefs for the appellate court and arguing in that court.

It is clear to me that the Legislature intended that a *trial* should include all the work and time required for representing a defendant charged with murder from the day of his arrest until the final decision in the highest court to which the case can be carried. It could not have intended that if the whole procedure was to be repeated, there would be no additional compensation.

A lawyer must continue to pay rent for his office during the second trial as much as during the first trial, he must continue to compensate his clerical help, his living expenses continue to go on. This case in-- volved two trials. It could happen that there would be three, four or even more trials. A lawyer cannot be expected to make a career of a case and receive no compensation for the ravages made into his budget of time and money. There is nothing in the law which suggests that because the defendant is indigent, the lawyer must carry on until he also becomes indigent.

Every rule of common sense and fair dealing proclaims that the Legislature intended the compensation involved to cover only one trial. In this case there were two trials, two judges, two juries. The work and responsibility involved were the same as if there had been two different defendants covering two different murders.

The brief of the City Solicitor opposing the payment of a second counsel fee makes much of the fact that prior to the Act of 1907, the Commonwealth was not required to make any payment to defense counsel in murder cases. Such an argument is wholly irrelevant. Prior to 1907, many services were obtained gratuitously for which now there is a charge. Lawyers, like everybody else, are victims of the high cost of living which since 1907 has reached Canaveral altitudes.

The Legislature very evidently saw the injustice of no compensation for legal services in murder cases and

accordingly provided for payment. It certainly cannot be said that the Legislature was motivated by charitable impulses in providing compensation for lawyers in murder cases. It may well have felt that despite the great will and devotion of a lawyer, he just cannot, without compensation, give to a murder trial the service, attention and time it demands. Accordingly, it provided that a person on trial for his life should receive the same kind of defense which is assured one with money to pay for counsel for his defense.

It is a matter of court history that in the pre-1907 days young lawyers just out of law school with a zeal in inverse proportion to knowledgeability of trial work were often assigned to represent indigent defendants so that they might acquire some courtroom familiarity. Only the inscrutable angel writing in her book of miscarriages of justice can tell how many innocent defendants suffered unjust penalties so that bright-eyed Justinian neophytes might gain experience.

The City Solicitor's brief says: "The Act of March 22, 1907, as amended, is therefore in derogation of the common law and for that reason alone must be strictly construed."

The Act of 1907 is not in derogation of the common law. It is in betterment of the common law. To discontinue a practice or a procedure which was unjust is not to derogate it; it is to improve it, it is to humanize, uplift, and ennoble it. To say that the Act of 1907 must be construed strictly against a liberal interpretation is to assume that the common rule represented a standard of correctness, which, of course, in many instances we know it did not. It was under the common law that over two hundred offenses were punishable by hanging, it was under the common law that posthumous desecrations, the pillory, ducking stool and other hideous practices and contrivances flourished.

The Philadelphia Bar Association Committee on Criminal Justice and Law Enforcement filed an able brief as amicus curiae. In that brief it said: "The effect of the judgment of the court below is to treat a destitute accused at a new murder trial as if he were standing trial for a non-capital offense."

This point is well taken because the law of Pennsylvania requires that every person accused of murder *shall* be represented by counsel. The statutory enactments under discussion provide that counsel in murder cases, where indigent defendants are involved, shall be compensated. Thus to require counsel to defend in a murder case without compensation is in effect to try the defendant as if he were standing trial for a noncapital offense, which, of course, is contrary to reality.

I also see merit in the Bar Association's statement that: "We believe unless this Court reverses the judgment below there will be established a precedent which will deny destitute murder defendants of their statutory right to representation by appointed compensated counsel who know it is their duty to appeal should there be reversible trial error and to continue representing the indigent accused until he is acquitted or convicted in a trial free of reversible error. To so deny destitute accused defeats the purpose of the Acts of 1907 and 1911 (supra.)"

The Bar Association is also justified in stating, as it does: "We, the organized Bar, render voluntarily many services for the public. However, we do not believe that we or any of us should be obligated by a court to involuntarily render service without compensation when there exists statutory provision for compensation for rendering that service."

Up until the decision by the second trial judge in this case, it was generally assumed at the Philadelphia Bar that there would be compensation for second trials in murder cases. The appellants point out in their

brief that in the case of *Commonwealth v. Turner*, 389 Pa. 239, "the defendant was tried for murder five times and after each trial counsel was compensated under this Act of Assembly." With the billions of dollars expended by the Commonwealth for governmental purposes, has it become so parsimonious, niggardly, frugal, cheeseparing and close-fisted that it cannot spend $500 for the defense of one of its citizens charged with murder the second time, when he may be just as innocent as he insisted he was at the first trial? There is not a word, syllable or comma in the Acts cited by the court below and by this Court which gives any similitude of rationalization to an affirmative answer to that question.

The Philadelphia Bar Association has come under fire for its courageous and wholesome stand in this case. The judge who presided at the second trial filed an opinion, as required by law, on March 19, 1962. Then on November 15, 1962, after the case had been argued before this Court, he filed a supplemental opinion in the nature of a press conference. To the assembled reporters in his chambers he declared that the "Criminal Business Committee of the bar association" was "trying to pull the wool over the eyes of the public."[3]

A brief filed by so reputable and distinguished a body as the Philadelphia Bar Association, under the approval of this Court, can not, with justification, be accused of deceptively parading sheep before the population.

The second trial judge in seasoned judicial language, accused some lawyers with "looking for a quick buck" at the taxpayer's expense.[4]

---

[3] Philadelphia Inquirer, Nov. 16, 1962.

[4] Philadelphia Daily News, Nov. 16, 1962.

In the same supplemental opinion, the second trial judge stated that the Bar Association's "Criminal Business Committee" took a court stand in the interest of "money for lawyers."

The brief filed by the Bar Association can hardly be characterized as a stand in the interest of "money for lawyers," but even if it could be denominated, there would be nothing wrong about such a stand. It is no secret and certainly no disgrace that lawyers practice law for money. The lawyer, like everybody else who works to put bread, cheese and a piece of cake on his table for his wife and family, is "worthy of his hire." Even judges get paid for their work and they have even appointed committees to appear before the Legislature to obtain additional money for their work in the way of salary increases. Nor is there anything wrong in being well represented when one is seeking what he believes to be his due. And I do not believe that the Bar Association should have been castigated in the manner it was by the second trial judge when it is well known that the lawyers at the Philadelphia Bar, as correctly stated by the Association, always have and always will, "when appointed by the Courts, to carry out their obligation to represent indigent defendants without regard to the adequacy or even existence of compensation."

The city solicitor's office also came in for the critical lash of the second trial judge in his supplemental opinion, charging it, in addition to the Bar Association, with over-the-eyes-wool-pulling tactics. The fact of the matter is that the city solicitor's office argued strenuously in this Court against the payment of the fee sought by the appellants in the instant case, as I have already noted in this opinion. I am pleased to note, however, that, while opposing, because of its interpretation of the statutes involved, payment of counsel fees sought here, the solicitor's office realistically observed:

"It is generally known that a counsel fee of $500 is inadequate when a long and difficult murder trial is involved followed by an appeal involving important issues to this Honorable Court, resulting in a retrial in the court below. It must likewise be recognized that an indigent prisoner indicted for murder is entitled to counsel who is receiving proper compensation and who has an adequate financial incentive to spur his efforts, as well as his humane interests in the case."

Even the majority opinion concedes that the amount requested by the appellants is not unreasonable. It says: "There is not the slightest doubt that the fee of $500 for all the services rendered by each counsel was *very inadequate* . . ." (Emphasis in original.)

The majority opinion then adds the modification— "if payable by a person of means." Is there any person in Pennsylvania with means more substantial than the State itself? Should this Court say that any individual citizen is more capable and willing than the State to pay what is proper and just for defending a person of the State?

It is very clear to me that decisional law, the statutes in question, logic and rationalization, to say nothing of equity, fair play and fair dealing, require the State to pay defense counsel, at least as wholly inadequate a sum for the second trial, as the wholly inadequate sum it pays for the first trial.

Defense counsel, as well as the city solicitor's office, in arguing the question involved in this litigation, referred both orally and by brief to some relevant New York cases. The second trial judge, using a vocabulary more emphatic than judicial, more of the market square than of the consultation chamber, characterized these New York cases as "phony." We can only guess that by employing the term "phony," the second trial judge meant spurious, fraudulent and/or counterfeit. If that was the purport of the second trial judge's shot, it

failed to hit the target of his scattergun fusillade. We presume that the cases which the second trial judge referred to are *People v. Montgomery,* 101 App. Div. 338, 91 N.Y.S. 765, and *People ex rel. McAvoy v. Prendergast,* 67 Misc. 541, 124 N.Y.S. 713.

We have examined these cases in the official reports and find that they are genuine, were actually decided and in due course published. Moreover, we find them very much in point. In *People v. Montgomery,* supra, the defendant had been tried twice and defense counsel, under appropriate legislation, asked for double counsel fee. The court allowed the second fee, holding that the limitation of $500 did not apply: *"That limitation was intended to apply only to a single trial* or a single appeal, and successive allowances may be granted upon successive trials by the court at different terms, each allowance within the limitation prescribed by the statute."

In *People v. Prendergast,* supra, the Court said: "The courts in construing the section in its present form have gradually extended the power to grant awards in separate proceedings. In the case of People v. Ferraro, 162 N.Y. 545, 57 N.E. 167, it was held that the Court of Appeals had the power to award a further sum of $500 upon the appeal. The case of the People v. Montgomery, 101 App. Div. 338, 91 N.Y. Supp. 765, further extended the doctrine to apply after a reversal of a conviction by the Court of Appeals to a retrial before another court, *in which case a further sum of $500 might be awarded."*

As a parting shot in his supplemental opinion, the second trial judge said that the Bar Association's committee action was "a form of avarice."

It is not avarice to ask for what the law provides, but it would be avarice on the part of a great Commonwealth to deny to defense counsel the money required to gather evidence, employ clerical hire, and do all that

is imperatively needed to guarantee to a citizen of the United States due process by jury trial which the Constitution guarantees, efficient and adequate representation which American justice dictates, and fair play which is the very synonym of the American way of life. I do not believe that the Legislature ever intended to put the Commonwealth in the position where it could be charged with penuriousness where the life and liberty of its citizens are involved.

Hence, I dissent.