**In re: Appeal of SILVERMAN.**

Commonwealth Court of Pennsylvania.

Argued Feb. 12, 2014.

Decided April 25, 2014.

Daniel Silverman, Philadelphia, pro se.

Colin S. Haviland, Philadelphia, for appellee.

BEFORE: PELLEGRINI, President Judge, and LEADBETTER, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge.

OPINION BY Judge SIMPSON.

Attorney Daniel Silverman, court-appointed PCRA[1] counsel (Counsel) for a defendant convicted of murder and sentenced to life imprisonment by the Court of Common Pleas of Philadelphia County (trial court), appeals an order dated No-

---

1. PCRA refers to the Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546.

vember 7, 2012, which awarded counsel fees in a reduced amount (Fee Award).

The Fee Award was rendered at about the same time that the trial court disposed of a remanded PCRA petition. The order disposing of the remanded PCRA petition is on its second appeal to the Superior Court. Initially, Counsel also appealed the Fee Award to the Superior Court, but when Counsel sought to amend the caption to delete the Commonwealth as appellee, the Superior Court transferred only the Fee Award appeal to this Court.

The nominal appellee is then-President Judge Pamela Dembe of the trial court (PJ), who, pursuant to local rules, reviewed the fee petition and entered the Fee Award. The PJ is represented by the Administrative Office of Pennsylvania Courts (AOPC). In addition to the substantive question of whether the PJ abused her discretion in awarding a reduced fee, threshold issues involve jurisdiction, appealability of the Fee Award, parties to any appeal, the scope of review, and appropriate process. After careful review, we affirm.

## Background

After the criminal defendant was found guilty and sentenced, Counsel was appointed, and a petition for PCRA relief was filed. The long history of the PCRA litigation is relevant primarily because multiple judges were involved, and the most involved judges left the trial court and are no longer available for input on the current fee request.

The Fee Award is in response to Counsel's third request for counsel fees related to PCRA relief. His first petition was granted by the PJ in the full amount of $7,312.50. This fee award occurred at about the time the trial court initially denied PCRA relief, without a hearing.

Counsel appealed the initial denial of PCRA relief to the Superior Court, which remanded the case for hearing. At about the time the initial PCRA appeal was decided, Counsel's second request for counsel fees was granted in the amount of an additional $1675. Counsel contends that his billing procedures have not changed since the two prior requests for counsel fees in this case were granted.

Because Counsel complains that his rights have been infringed by the way in which his third request for counsel fees was handled, and he seeks an opportunity to be heard, some detail is necessary.

Counsel filed the current fee request in early November, 2012, at about the same time that the substantive PCRA issues were resolved by the trial court. On November 7, 2012, the PJ signed the Fee Award in the amount of $6,672.50, $4,465 less than requested. Counsel complains in part that the PJ did not consult with the trial judge who presided over the PCRA litigation, as required by local rule.

Counsel avers he was never served with the Fee Award. He came to know of its existence when he received a check. According to Counsel, in a telephone call to the PJ's chambers, he learned that his billing increments were one concern.

Counsel filed a motion for reconsideration alleging arbitrariness, an unconstitutional taking, and the unfairness of an *ex post facto* law, because the PJ disallowed his .25 hour billing increments and imposed .10 hour billing increments. According to Counsel, he also offered to discuss the matter informally with the PJ. The motion for reconsideration was denied without a hearing, and Counsel claims he received no response to his letters to the PJ.

Because the Fee Award was never entered on the docket, Counsel filed a prae-

cipe for entry of an adverse order. The same day, the Fee Award was entered on the docket. After consultation with the Superior Court's Deputy Prothonotary, Counsel filed an appeal in that court.

Subsequently, the PJ filed an opinion explaining the Fee Award. The PJ did not question the quality of legal services rendered by Counsel. She observed, however, that on remand of the PCRA litigation, no new legal issues were raised, and Counsel used the same expert witness he used in the initial PCRA proceeding.

The PJ also questioned Counsel's billing increments for short clerical tasks performed repeatedly between 2009 and 2012, such as telephone calls, correspondence and e-mails to various individuals. Further, the PJ dismissed Counsel's claim that this new approach to his billing increments amounted to an *ex post facto*-type law. In this regard, the PJ noted that in another named case Counsel's fee was reduced, and he was not held to a different standard in the current case. "The total hours he claimed to have spent on the case were simply too high considering the work he already had done." Tr. Ct., Slip Op., 4/18/13, at 4.

The PJ also reduced Counsel's fee based on "block billing," which made it difficult for the PJ to assess how much time he spent on each task. The PJ also disallowed compensation for local travel time and for time spent photocopying documents. Further, citing the local rule provision which gives the judge discretion to determine whether time is reasonably spent, the PJ stated that she "allowed compensation for what would be a reasonable estimate of in court and out of court time in the instant case." *Id.* at 4–5.

Rejecting Counsel's claims that his due process rights were violated, the PJ disputed that Counsel had a property right in an award of the full fee, stating "until the court signed an order awarding fees [Counsel] possessed nothing more than the hope that he would be granted $11,137.50. *See, e.g., In re Metro Transportation Co.,* 107 Bankr. [B.R.] 50, 53 (D.E.D.Pa.[E.D.Pa.]1989)." *Id.* at 5.

Finally, the PJ explained that under the local rule the maximum payment to counsel for a homicide PCRA is $4,000. Additional payments may be made if the PJ determines extraordinary circumstances justify it. The PJ closed her opinion as follows:

> [Counsel] was paid more than the statutory maximum. To pay him an additional $4465.00 would be excessive given budgetary constraints, and clearly not justified when looking at the case as a whole.

*Id.*

### Issues

In his main brief, Counsel questions whether the PJ abused her discretion in awarding only part of the amount requested above the presumed maximum fee of $4,000.

AOPC raises several issues. First, in the "Counter Statement of Jurisdiction" portion of its Brief for Appellee, it questions whether the Commonwealth Court has jurisdiction, primarily because there is no precedent for the proposition that an administrative order is a final order. Relatedly, AOPC questions whether the Fee Award is a final appealable order. Third, AOPC questions whether the City of Philadelphia is an indispensable party such that its absence from the proceedings requires quashing the appeal. Fourth, AOPC questions whether Counsel has a protected property interest which implicates "taking" protections and due process protections and requires a hearing.

### Appellate Jurisdiction

■ Counsel argues that the issue before the Court is one of first impression and that the question of jurisdiction is somewhat unclear. He is only proceeding in the Commonwealth Court because the appeal was transferred from the Superior Court and accepted by the Commonwealth Court.

Although it did not file a formal objection, AOPC questions the Commonwealth Court's appellate jurisdiction. It argues that there is no precedent standing for the proposition that an administrative order qualifies as a final order, and it argues that a judicial officer who authored an opinion is not a proper party to an appeal of that opinion. Relying on *In Re Domestic Relations Hearing Room*, 796 A.2d 407 (Pa. Cmwlth.2002) (appeal quashed because an administrative order issued by a common pleas court president judge was not a final order), AOPC argues that the appeal must be quashed.

We view the matter as an appeal from a decision by a president judge acting as a court administrator rather than as a trial judge, and exercising her discretion pursuant to the local criminal rules regarding payment for services rendered by a court-appointed attorney. Accordingly, the Commonwealth Court arguably has jurisdiction pursuant to Section 762(a)(4) of the Judicial Code, 42 Pa.C.S. § 762(a)(4) ("Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following cases: ... (4) Local government civil and criminal matters.").

While litigation concerning the Fee Award could be deemed ancillary to the PCRA appeal pending in the Superior Court, our conclusion regarding appellate jurisdiction is consistent with this Court's interest in judicial economy and long-standing policy not to re-transfer matters to the Superior Court. *See* Pa.R.A.P. 741; 20 G. Ronald Darlington et al., Pennsylvania Appellate Practice §§ 741:2, 741:3 (2013–2014 ed.). The conclusion is also consistent with our reluctance to encumber our Supreme Court's superintendency powers. *Mun. Publ'ns, Inc. v. Court of Common Pleas of Phila. Cnty.*, 507 Pa. 194, 489 A.2d 1286 (1985); *see* Pa.R.A.P. 751(b); 20 G. Ronald Darlington et al., Pennsylvania Appellate Practice § 751:4 (2013–2014 ed.).

### Final Appealable Order

■ AOPC argues that Philadelphia Criminal Rules 424 [2] and 425 [3] do not con-

---

**2.** Philadelphia Criminal Rule 424 provides in pertinent part as follows (with emphasis added):

**Rule 424 Compensation Rates for Court–Appointed Counsel.**

\* \* \*

B. *Homicide Cases*

(1) The appointment of counsel in homicide cases shall be made in accordance with the procedures contained in Phila.Crim.R. 122–1.

\* \* \*

(5) *Counsel shall be compensated for services rendered at a rate not exceeding fifty dollars ($50) per hour for time reasonably expended in Court, and forty dollars ($40) per hour for time reasonably expended out of* Court. *Such compensation shall not exceed four thousand dollars ($4,000) where one counsel has been assigned,* and shall not exceed a total of six thousand ($6,000) where two counsel have been assigned. *Payment in excess of the limits stated herein may only be made, if the Court to whom the application is made certifies to the President Judge that because of extraordinary circumstances set forth, such additional payments are necessary to provide fair compensation for representation. Any payment in excess of the above limits will be at the discretion of the President Judge.* When two counsel have been assigned, their claims for compensation and reimbursement shall be stated separately. Each claim for compensation and reimbursement shall be made in accor-

fer a right of appeal. Phila.Crim.R. 424, 425. In particular, Philadelphia Criminal Rule 425(F)(2) provides in part: "The order for payment by the president judge will constitute final authority." AOPC argues that this demonstrates that the Fee Award is meant to be conclusive and not appealable. AOPC asserts reviewing courts should defer to the local court's application, construction, and interpretation of a local rule of court.

■ Further, AOPC argues generally that compensation allowances made pursuant to the local rules are administrative orders and not final orders. An adminis-

> dance with the provisions of Phila.Crim.R. 424.
>
> \* \* \*
>
> D. *Payment*
> Such allowance of expenses and compensation under this Rule shall be a charge upon the City and County of Philadelphia, to be paid by the City Treasurer, upon certification of the appropriate Judge.
> E. *Reimbursement*
> (1) The defendant ... shall, to the extent of his, her or their financial ability, reimburse the City and County of Philadelphia for compensation and expenses incurred and paid to Court-assigned counsel at such rate as the Court shall order and direct....

3. Philadelphia Criminal Rule 425 provides in relevant part (with emphasis added):

> **Rule 425 Guidelines for Court–Appointed Counsel Who Request Compensation and Reimbursement in Criminal Cases.**
>
> \* \* \*
>
> C. *Payments:*
> In order to receive payment for services rendered and costs incurred, each Court-appointed counsel must file an original and three (3) legible copies of a request for compensation and reimbursement in the form of a petition and order with the Deputy Court Administrator for Fiscal Affairs.
>
> \* \* \*
>
> (3) Petitions requesting compensation for PC[R]A work may be filed only after a hearing has been held and all required briefs have been submitted.
>
> \* \* \*
>
> E. *Review by Deputy Court Administrator for Fiscal Affairs:*
> The Deputy Court Administrator for Fiscal Affairs shall initially review the petition, and comment on the correctness of the mathematical calculations, the prior payments disbursed, the appropriate statute to be considered by the Judge, and any unusual aspects concerning the petition which should be brought to the attention of the reviewing Judge.
> F. *Substance of Review:*
> Petitions for compensation and reimbursement shall be reviewed as follows:
>
> \* \* \*
>
> (2) For Act 180 (murder) cases in which the sum requested exceeds the statutory limit, only the President Judge has the authority to approve payment beyond the statutory limit. Where such a sum is requested in counsel's petition, the Trial Judge shall forward the petition to the Deputy Court Administrator for Fiscal Affairs for submission to the President Judge. The Trial Judge shall attach his recommendation to the petition and a brief statement in support thereof. *The order for payment by the President Judge shall constitute final authority.*
>
> \* \* \*
>
> G. *Standards:*
> The following standards shall apply to determine the appropriate compensation and reimbursement:
> (1) In–Court time is that which counsel is actually engaged in Court representing the defendant in the assigned case in a judicial proceeding. Out–of–Court time is all other time reasonably expended in the representation of the defendant in the assigned case including time spent waiting in Court for the case to be reached. *It is within the Judge's discretion to determine whether time is reasonably spent. The Court in determining reasonableness may consider whether the time spent was necessary or whether less time consuming alternatives existed.*
>
> \* \* \*
>
> (6) Counsel should consider that appointment by the Court is a public trust and should keep requests for compensation and reimbursement to a fair and reasonable sum consistent with any other request for payment out of public funds. If counsel does not feel that such a request can remain within this standard, he should decline the appointment.

trative order issued by a common pleas court president judge is not a final order. *Domestic Relations Hearing Room.*

Additionally, AOPC argues that the absence of the right to appeal compensation allowances does not offend due process, and reduction of a fee request is not a prohibited "taking" of private property, because courts are not constitutionally required to pay counsel for accepting court appointments. AOPC relies on federal cases[4] and cases from other jurisdictions[5] for the proposition that courts can compel defense counsel to accept limited fees and that there is no inherent right to appeal a court's decision regarding compensation decisions.

Counsel argues that the Fee Award is defined as a final order under the provision of the local rule that refers to the PJ's decision on requests exceeding the statutory limit as "final authority." Phila.Crim.R. 425(F)(2). Indeed, every aspect of that rule contemplates that the entire process for compensating court-appointed counsel in Philadelphia is a formal court procedure with precise pleading requirements and detailed standards for judicial review. Furthermore, Counsel points out, the PJ's conduct indicated her intention that the order be treated as a final order.

Counsel also disputes that he has no property interest in compensation due him under his contract with the government to represent an indigent defendant accused of murder. He cites several out-of-state cases (referenced later) for the proposition that inadequate compensation of court-appointed counsel in criminal cases violates counsel's rights.

Further, Counsel argues that all jurisdictions provide some measure of appellate review of a trial judge's arbitrary ruling on counsel fees. Counsel cites federal cases and cases from several states that provide direct appellate review or mandamus review of compensation decisions.[6]

While the parties reference interesting decisions from other jurisdictions, the primary source for our analysis here must be the local rules and the current litigation.

As to whether the Fee Award is final (in the sense that the appeal is not premature), it is undisputed that the primary litigation involving the PCRA petition has been completed in the trial court and has been appealed to the Superior Court. *See* Certified Record (C.R.), Docket Entries D24/1, 11/02/2012 (Order dismissing PCRA petition); D26/2, 11/05/2012 (Notice of Appeal to the Superior Court). The Fee

---

**4.** *Powell v. State of Alabama*, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *Clement v. Court of Common Pleas of Phila. Cnty.*, 945 F.Supp. 811, 812–13 (E.D.Pa.1996), *aff'd*, 101 F.3d 689 (3d Cir.1996) ("There is also substantial doubt that plaintiffs can make out a constitutional cause of action because courts have the power to require criminal defense counsel to serve at reduced compensation and, perhaps even, at no compensation whatsoever."); *see also United States v. Stone*, 53 F.3d 141 (6th Cir.1995) (non-adversarial nature of reimbursement provisions is a factor weighing against appellate review); *Landano v. Rafferty*, 859 F.2d 301 (3d Cir.1988) (federal circuit courts hold that compensation determinations by the district court are not appealable).

**5.** *E.g., Beury v. State*, 108 Nev. 219, 826 P.2d 956 (1992), *overruled by Wood v. State*, 113 Nev. 1455, 951 P.2d 601 (1997); *People v. Herring*, 279 A.D.2d 765, 718 N.Y.S.2d 492 (2001).

**6.** *E.g., United States v. Smith*, 633 F.2d 739 (7th Cir.1980) (counsel may seek reconsideration by chief judge or mandamus review in Supreme Court); *United States v. D'Andrea*, 612 F.2d 1386 (7th Cir.1980); *McClain v. Atwater*, 110 So.3d 892 (Fla.2013); *In re Bettencourt*, 126 Hawai'i 26, 265 P.3d 1122 (2011); *Simmons v. State Public Defender*, 791 N.W.2d 69 (Iowa 2010); *Sowell v. Ohio*, 135 Ohio St.3d 1468, 989 N.E.2d 68 (2013).

Award resolved an ancillary matter. With this broader perspective, the Fee Award was one of two trial court orders which together resolved all the litigation in the trial court. AOPC does not assert that there are any issues in this case that remain undecided in the trial court. *See* Pa.R.A.P. 341(b) (final order is any order which disposes of all claims and of all parties).

Additionally, this procedure is consistent with the local rules and with Counsel's past practice. As to the local rules, they provide in pertinent part: "Petitions requesting compensation for PC[R]A work may be filed only after a hearing has been held and all required briefs have been submitted." Phila.Crim.R. 425(C)(3). Counsel submitted fee requests when the initial PCRA decision was appealed, when the initial PCRA appeal was decided, and, now, when the remanded PCRA matter was decided and appealed. Under all these considerations, the Fee Award qualifies as a final order.

AOPC also argues that the nature of the Fee Award renders it nonappealable, because it is an administrative order. AOPC relies on *Domestic Relations Hearing Room.* That case, however, does not control appealability here. *Domestic Relations Hearing Room* involved an administrative order about the use of a room in a county courthouse. Because there was no underlying judicial proceeding involving disputed claims or parties, and no case, action or petition was finally resolved by the order, it was determined to be not appealable. Such are not the facts here, where there was a pending PCRA petition and an ancillary request for counsel fees pursuant to a specific procedure. Whether the Fee Award was an administrative order or not, it resolved a discrete issue based on a written request involving an interested party.

Regarding the language of the local rules, while they refer to the president judge's decision on fees in excess of the presumed maximum as "final authority," they do not specifically preclude appeal. In any event, AOPC fails to refer to Article V, Section 9 of the Pennsylvania Constitution, which provides for a right of appeal in all cases "from a court of record or from an administrative agency to a court of record or to an appellate court...." Pa. Const. art. V, § 9. In the face of this constitutional provision, we assume a right of appeal exists even if not specifically provided in the local rules.

Accordingly, we conclude that there is a right to appeal a fee award under the local rules, and that the Fee Award is a final appealable order.

### Indispensable Party

■ Citing part of the local rule that mandates payment to counsel by the City Treasurer, AOPC argues that the City, and not the PJ, is an indispensable party. Phila.Crim.R. 424(D) ("Such allowance of expenses and compensation under this Rule shall be a charge upon the City and County of Philadelphia, to be paid by the City Treasurer, upon the certification of the appropriate Judge.") In contrast, the current appeal puts the PJ in the untenable position of litigating the merits of her own opinion. Because of the absence of an indispensable party, this Court lacks subject matter jurisdiction, and the appeal must be quashed. *See Sprague v. Casey,* 520 Pa. 38, 550 A.2d 184 (1988).

Should an appeal be allowed, AOPC asserts the proper parties are those in *Commonwealth v. Johnson,* 409 Pa. 639, 187 A.2d 761 (1963), where the Supreme Court addressed a prior maximum fee protocol for court-appointed counsel for indigent defendants in Philadelphia. There, the City Solicitor's Office rather than the

judge or court system argued the matter to the Supreme Court.

In reply, Counsel argues that the PJ and the First Judicial District have a vested interest in the procedural issues. Moreover, the City has no dog in the fight because it pays whatever amount is ordered. The City has never sought to intervene in any fee dispute.

 Because the absence of an indispensable party goes absolutely to the jurisdiction of the court, an objection on this ground cannot be waived, and may be raised at any time. *See HYK Constr. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009 (Pa. Cmwlth.2010). The basic inquiry in determining whether a party is indispensable concerns whether justice can be done in the absence of him or her. *Id.* A party is generally regarded to be indispensable when his or her rights are so connected with the claims of the litigants that no decree can be made without impairing those rights. *Id.*

Here, the procedures for fee awards require no participation from the City. Further, Counsel does not raise a facial challenge to the local rules, which could result in a broader burden on the City, nor does he seek a remedy from the City. Rather, he challenges the process as applied to him, and he seeks either new process or an award of his entire fee request.

The local rules contain numerous restrictions on the amount of fee awards. These include a reduced hourly fee system depending on the severity of the underlying conviction (here, $50 an hour for in-court time and $40 an hour for out-of-court time), a presumed maximum fee, subject to extension only upon extraordinary circumstances, and the reposing of broad discretion in the presiding judge and the president judge. Thus, the local rules protect the City's interest in the amount of the awards, consistent with the public obligation to provide competent representation to indigent defendants.

Further, it is unclear the extent to which the City actually paid this Fee Award. While the local rules generally refer to a charge on the City and County of Philadelphia, which shall be paid by the City Treasurer, the Docket Entries contain a notation that the Fee Award was "Stamped PAID November of 2012 by Fiscal Affairs." C.R., Docket Entry D25B/1, 11/07/2012. This is an apparent reference to the Deputy Court Administrator for Fiscal Affairs, who is involved in review and approval of fee requests. *See* Phila.CrimR. 425(E), (F). Thus, a factual issue remains as to the nature of the account out of which payment was made.

Nevertheless, the inquiry into whether a party is indispensable is to be made from the prospective of protecting the rights of the absent party. *Montella v. Berkheimer Assocs.*, 690 A.2d 802 (Pa.Cmwlth.1997). Because the City's interest in the amount of fee awards is adequately protected, and because the City does not participate in the procedures for rendering those awards, we conclude that the City lacks an indispensable interest in the *procedure* for entering fee awards,[7] and that joinder of the City, while permissible, is not mandatory.

Moreover, even if we were to determine that the City is indispensable, we would not quash the appeal on that basis. Instead, we would hold the matter in abeyance and require the joinder of the City.

---

**7.** In contrast, the City would be an indispensable party in an action to recover from the defendant the sums spent on court-appointed counsel under the local rules. *See* Phila.Crim.R. 424(E) (*"Reimbursement"*). This provision specifically refers to petitions by the City and County of Philadelphia.

*See* 3 STANDARD PENNSYLVANIA PRACTICE 2D § 14:136 (2009 ed.).

However, we admit to discomfort over the asymmetrical alignment of parties here. It is not in the interest of judicial economy for a president judge to act as a nominal appellee in a dispute over a fee award, nor does it enhance the dignity of the office when a judicial officer is placed in an adversarial position. In the unlikely event that this issue arises again in the future, consultation between the trial court and the governmental unit may prove beneficial.

### Protected Property Interest Requiring Due Process

■ AOPC argues that no process is due Counsel because he has no property interest in fees earned as court-appointed counsel. AOPC relies on federal cases and cases from other jurisdictions. *E.g., Clement v. Court of Common Pleas of Phila. Cnty.,* 945 F.Supp. 811 (E.D.Pa.1996), *aff'd,* 101 F.3d 689 (3d Cir.1996). Lacking a protected property interest, neither "taking" protections [8] nor due process protections [9] apply.

Counsel asserts a protected property interest in his professional services. He cites several cases from other states which hold that failure to adequately compensate court-appointed counsel can be a "taking" to which constitutional protections apply. *DeLisio v. Alaska Superior Court,* 740 P.2d 437 (Alaska 1987); *Arnold v. Kemp,* 306 Ark. 294, 813 S.W.2d 770 (1991); *State ex rel. Stephan v. Smith,* 242 Kan. 336, 747 P.2d 816 (1987); *State v. Lynch,* 796 P.2d 1150 (Okla.1990).

The PJ concluded that Counsel failed to set forth a basis for a due process claim because "until the court signed an order awarding fees [Counsel] possessed nothing more than a hope that he would be granted $11,137.50." Tr. Ct., Slip Op. at 5.

Although not cited by the parties here, our independent research reveals two decisions which inform our analysis. In *State v. Sells,* No. 2005–CA–37, 2006 WL 2795340 (Ohio Ct.App. Sept. 29, 2006) (not reported in N.E.2d),[10] an intermediate appellate court in Ohio entertained an appeal from a trial court order which declined to award the full amount of fees sought by court-appointed counsel in a murder prosecution. Like Counsel here, the court-appointed attorneys raised an as-applied con-

---

8. The final portion of Article I Section 10 of the Pennsylvania Constitution, regarding governmental taking of private property, provides as follows: "nor shall private property be taken or applied to public use, without authority of law and without just compensation being first made or secured." PA. CONST. art. I, § 10. The Takings Clause of the Fifth Amendment to the United States Constitution states in relevant part that no person may be "deprived of life, liberty or property without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.

Neither party here offers an *Edmunds* analysis, *see Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991), or even a citation to any Pennsylvania Supreme Court decision in this area.

9. Although Counsel asserts in one sentence that the PJ "provided counsel with no notice or opportunity to be heard before taking his property in violation of the procedural due process requirements of the Fourteenth Amendment," Appellant's Br. at 16, he offers no analysis of the Pennsylvania Supreme Court's decisions in this area.

10. Pursuant to the Ohio Supreme Court's Rules for the Reporting of Opinions ("Rep. Op.R.") 3.4, "All opinions of the courts of appeals issued after May 1, 2002 may be cited as legal authority and weighed as deemed appropriate by the courts without regard to whether the opinion was published or in what form it was published."

stitutional challenge, and they relied on the same cases.

The Ohio Court of Appeals rejected the constitutional claims, concluding that court-appointed counsel were not compelled to represent the criminal defendant and that in the absence of compulsion by the government no "taking" occurred. The Court of Appeals distinguished the cases relied upon by court-appointed counsel because in all those cases the attorneys objected to their appointments; thus, some compulsion was present. The Court of Appeals relied in part upon a trial court opinion from Massachusetts for the "compulsion" analysis, *Machado v. Leahy*, No. BRCV200200514, 2004 WL 233335, 17 Mass.L.Rptr. 263 (Mass.Super. Jan. 3, 2004) (not reported in N.E.2d).

In *Machado*, a large number of court-appointed attorneys sought to challenge the adequacy of compensation rates paid. Among other issues, they brought "taking" challenges. The court rejected those claims for several reasons. First, the court concluded that government action does not amount to a taking without legal compulsion, which is not present where plaintiffs voluntarily subject themselves to known obligations. Second, the court concluded that court-appointed attorneys did not have a constitutionally protected property interest in the higher rates of pay they sought, and it relied on cases relating to monetary benefits not yet paid or received.[11]

Here, there is no indication that Counsel sought to decline representation but was nevertheless compelled to undertake it. *See* Reproduced Record at 6 (Letter of Appointment: "If for any reason you can-

not perform the legal duties necessary to adequately represent your court assigned client, you must immediately notify this court."); Phila.Crim.R. 425(G)(6) ("If counsel does not feel that such a [compensation] request can remain within this standard [fair and reasonable sum consistent with any other request for payment out of public funds], he should decline the appointment."). In the absence of government compulsion, there is no prohibited taking from court-appointed counsel. *Sells.* Concomitantly, the out-of-state cases upon which Counsel relies are distinguished. *Id.* We agree with and adopt the persuasive reasoning in *Sells.*

We reach the same result by using the Pennsylvania Supreme Court's analysis for governmental "taking." Pennsylvania "taking" cases usually regard regulations over the use of real property, rather than restrictions on compensation for services. Nevertheless, such an analysis can advance our understanding of abstract legal principles.

In *United Artists' Theater Circuit, Inc. v. City of Philadelphia,* 535 Pa. 370, 635 A.2d 612 (1993), the Pennsylvania Supreme Court concluded that the designation of property as historic without the consent of the owner does not constitute a taking pursuant to Article I, Section 10 of the Pennsylvania Constitution. In so holding, the Court acknowledged that it continually turned to federal precedent for guidance in its "taking" jurisprudence. *Id.* at 377, 635 A.2d at 616. After undertaking a thorough review of past reliance on federal caselaw, the Court identified three conditions that determine whether governmental action constitutes a taking requiring

---

11. *Hoffman v. City of Warwick,* 909 F.2d 608 (1st Cir.1990); *Rhode Island Brotherhood of Corr. Officers v. Rhode Island,* 264 F.Supp.2d 87 (D.R.I.2003); *German v. Commonwealth,* 410 Mass. 445, 574 N.E.2d 336 (1991). This

appears to be similar to the PJ's analysis here, although she cited a case, discussed below, which dealt with the detail required when a fee request is denied in part.

just compensation. *Id.* at 381, 635 A.2d at 618. The condition of particular concern here is that "the means [employed by the government] must not be unduly oppressive upon the property holder, considering the economic impact of the regulation...." *Id.* The Court recognized that "action in the form of regulation can so diminish the value of property as to constitute a taking." *Id.* at 379, 635 A.2d at 617 (citations and emphasis omitted). "However, the mere fact that the regulation deprives the property owner of the most profitable use of his property is not necessarily enough to establish the owner's right to compensation." *Id.; see also, City of Pittsburgh v. Weinberg,* 544 Pa. 286, 676 A.2d 207 (1996).

The Fee Award may have resulted in hurt feelings. Our review of the record, however, convinces us that the partial reduction in Counsel's third fee request was not unduly oppressive, given the PJ's explanation. Thus, mindful of the procedural posture of the case, of the fees already awarded in full ($8,987.50), and of the tempered expectations for fee requests above $4000, the additional award of $6,672 instead of $11,137.50 was not such a diminution in the value of Counsel's services to amount to a taking requiring further compensation.

Regarding Counsel's due process claims, we are not prepared at this time to go as far as the Massachusetts court in *Machado,* and hold that court-appointed counsel have no protected interest. Rather, we avoid that declaration. Such an approach is consistent with the mandate that constitutional issues be avoided if possible. *Stackhouse v. Pa. State Police,* 892 A.2d 54 (Pa.Cmwlth.2006). Similar to the Ohio Court of Appeals in *Sells,* we will resolve the issue in another way.

Thus, as to Counsel's claim for a hearing, the local rules do not provide for a hearing on the fee request.[12] Instead, the local rules provide for a detailed submission by counsel which will be reviewed by the appropriate judge. Phila.Crim.R. 425(D). Counsel does not claim that he has ever been granted a hearing on his prior fee requests, nor does he claim others are given hearings on fee requests. Having voluntarily submitted to a process where hearings are not contemplated, Counsel implicitly agreed to the process, and he may not now be heard to complain that it is inadequate. *See Sells* (counsel who voluntarily accepted an assignment implicitly agreed to county's fee cap).

To the extent that this appeal might have been avoided by more communication and fewer provocative assertions, we hope that this controversy will be an isolated one. Although the local rules do not require a hearing or other formal opportunity for court-appointed counsel to be heard beyond written submissions, nor do the rules forbid acknowledgement of counsel's concerns.

For the above reasons, we reject Counsel's "taking" claims and request for more robust process.

### Abuse of Discretion

■ Counsel argues that the Fee Award was the result of a gross abuse of discretion, for several reasons. First, he asserts that the PJ denied compensation for necessary legal services, such as reviewing correspondence from his client and opposing counsel, reviewing documents from opposing counsel, interviewing trial counsel, traveling to interview and prepare witnesses, reviewing the credentials of the

---

**12.** In contrast, the local rules expressly anticipate hearings in matters relating to an action by the City to recover from the defendant. *See* Phila.Crim.R. 424(E)(2), (3) (*"Reimbursement"*).

opposing expert witness, and communicating with the client's family.

Second, Counsel asserts that the PJ's own handwritten itemized calculations of what she decided not to compensate do not remotely add up to the 89.3 hours of time he claims she refused to compensate.

Third, Counsel argues that the PJ impermissibly considered "budgetary constraints" when evaluating the fee request. Court-appointed counsel should be compensated in accordance with their contract with the trial court to provide legal services in exchange for an agreed-upon (and already extremely low) fee.

Fourth, Counsel asserts the PJ made no effort to determine the amount of work he provided. She reviewed no transcripts, briefs or motions, and she did not consult with the presiding judge.

Fifth, as to the billing increments, the PJ's explanation does not comport with the adjustments she made. Also, the PJ never previously imposed a. 10 hour billing increment on Counsel, and Counsel's prior fee requests in this case were approved with .25 hour billing increments. To spring a new requirement on Counsel after the fact is unreasonable, he asserts.

As to the substance of the Fee Award, AOPC asserts the PJ properly applied the "extraordinary circumstances" test for a fee award above the statutory maximum for homicide PCRA matters of $4,000.[13]

Otherwise, AOPC rests on the PJ's opinion.

In reply, Counsel contends that because AOPC did not address any of his arguments regarding abuse of discretion, the Court should view defenses as waived.

The parties offer no useful discussion regarding the standard and scope of appellate review.[14] So, we look to the local rules for guidance. Acknowledging the broad discretion reposed in the PJ to assess extraordinary circumstances, we review for abuse of discretion of partial approval above the presumed maximum fee. However, cognizant of the lack of a definition of "extraordinary circumstances" and of the pronouncement that the PJ's determination of extraordinary circumstances is "final authority," our review is, by design of the local rules, very limited. Expressed differently, our standard of review is deferential to the judicial authorities in the trial court. *Reaves v. Knauer*, 979 A.2d 404 (Pa.Cmwlth.2009) (the application, construction, and interpretation of local rules of court are matters primarily to be determined by the trial court promulgating the rule, and this Court will only interfere where the trial court commits an abuse of discretion).

Pertaining to scope of review, the bulk of the case involving the denial of PCRA relief remains with the Superior Court. Under these unusual circumstances, we

---

13. Initially, Counsel challenged the "extraordinary circumstances" test. Appellant's Br. at 34–35. He later conceded such a test is mentioned in the local rule. Appellant's Reply Br. at 12, n. 2. He asserts, however, that the test was satisfied here because the Fee Award was in excess of the statutory maximum.

14. Counsel contends that attorneys' fees are to be awarded in the ordinary case unless there is a special reason not to award them. The court reviewing the fee application (here,

the trial court) must make detailed findings, explaining carefully the method by which the award was computed. He also argues the "reasonableness" is the central question in all fee requests. He asserts that a reasonable fee is determined in all contexts by calculating the "lodestar," which is the number of hours reasonably expended multiplied by a reasonable hourly rate. Appellant's Br. at 13–14.

AOPC asserts there is no right to appeal a fee award. Br. for Appellee at 2.

will review all that has been submitted by the parties.

Counsel assigns error in the PJ's reference to "budgetary constraints." Review for abuse of discretion must include a review for errors of law. This is because an error of law amounts to an abuse of discretion. *See Newtown Square East L.P. v. Nat'l Realty Corp.*, 38 A.3d 1018 (Pa. Cmwlth.2011). As to errors of law, our standard of review is *de novo,* and our scope of review is plenary. *L. Makefield Twp. v. Lands of Chester Dalgewicz,* — Pa. ——, 67 A.3d 772 (2013).

Initially, we decline to find waiver of all substantive defenses to claims of abuse of discretion here. This is because AOPC expressly adopted the PJ's opinion, and that opinion explains her reasons.

Procedurally, Counsel complains that the PJ did not follow the local rules because she did not discuss the fee request with the presiding judge. *See* Phila.Crim.R. 425(F)(2). However, it is undisputed that the judge who presided over 99% of the remanded PCRA proceedings left the trial court and is no longer available. Counsel does not explain how this problem should be overcome. Nor does Counsel suggest that participation by the available "1% judge" would make any difference in the outcome. Under these circumstances, no abuse of discretion is evident.

Counsel also finds fault in that the PJ did not review transcripts, briefs or motions. It is unclear on what factual basis Counsel makes this claim, but it is of no avail in any event. The local rules do not require the PJ to review transcripts, briefs or motions, especially when they have not been submitted to her as part of the fee request. Therefore, no departure from the local rules is evident.

Further, we disagree that the PJ committed an error of law by reference to "budgetary constraints." To the contrary, Philadelphia's budgetary problems for providing legal services to indigent defendants are legendary. *E.g., Clement* (action alleging constitutional violations arising from failure to properly fund defense counsel for indigent defendants). Moreover, the Pennsylvania Supreme Court acknowledged that limited public resources are an appropriate consideration in the court-appointed counsel compensation analysis. *Johnson,* 409 Pa. at 644, 187 A.2d at 763.

Additionally, both the terms and the structure of the local rules demonstrate the intent to moderate counsel fees. Thus, counsel are instructed that:

> Counsel should consider that appointment by the Court is a public trust and should keep requests for compensation and reimbursement to a fair and reasonable sum consistent with any other request for payment out of public funds. If counsel does not feel that such a request can remain within this standard, he should decline the appointment.

Phila.Crim.R. 425(G)(6). Also, as noted above, the local rules limit the hourly billing amount, Phila.Crim.R. 424(B)(5), contain a presumed maximum fee, *id.,* allow extensions beyond the presumed maximum fee only in "exceptional circumstances" as determined by the PJ, *id.,* and allow a judge to determine whether time is reasonably spent, including determining whether less time consuming alternatives existed. Phila.Crim.R. 425(G)(1). Further, the local rules require review by the Deputy Court Administrator for Fiscal Affairs, who should bring to the attention of the reviewing judge any unusual aspects concerning the petition for compensation. Phila.Crim.R. 425(E). The rules do not restrict the Deputy Court Administrator for Fiscal Affairs from bringing "budget-

ary constraints" to the attention of the reviewing judge.

Given this general background, given no definitional limitations on the phrase "extraordinary circumstances," and given no limitations on the matters which the Deputy Court Administrator for Fiscal Affairs may bring to a judge's attention, we discern no error of law in the PJ's reference to "budgetary constraints."

As to the numerous factual issues raised by Counsel, we reference a case cited by the PJ, *In re Metro Transportation Co.*, 107 B.R. 50 (E.D.Pa.1989). That case involved counsel fees in a bankruptcy matter. Upon denial of a motion to reconsider the reduced fees approved, appeal was taken to the district court, sitting in its appellate capacity. The district court reviewed for abuse of discretion. The district court held that the Bankruptcy Court did not abuse its discretion in disallowing services it considered duplicative, unreasonable and unnecessary. Rejecting counsel's claim to the contrary, the district court refused to require the Bankruptcy Court to "delineate with specificity to counsel's satisfaction every reason for every disallowance of every aspect of a fee application." 107 B.R. at 54. Thus, the Bankruptcy Court provided its reasoning, and it did not abuse its discretion in not disclosing all of its reasons for its reductions and disallowances. *Id.*

We agree with the *Metro* court's approach to the level of detail required in explaining a fee award. Thus, we hold that the PJ was not required to delineate with specificity to Counsel's satisfaction every reason for every disallowance of every aspect of the fee request. Instead, it is sufficient that the PJ explain her decision in a manner sufficient for appellate review. Similar to the situation in *Metro*, the PJ's opinion here sufficiently explained her reasoning.

The PJ pointed out that this was a PCRA matter (and thus the second round of litigation regarding the defendant), that the PCRA case itself was on remand, having already moved once through the trial court, that no new legal issues were raised, and that Counsel used the same expert witness he used in the initial PCRA proceedings. The PJ reduced Counsel's billing increment for short clerical tasks performed repeatedly between 2009 and 2012. The PJ concluded that the total hours Counsel claimed to have spent on the case were simply too high considering the work he had already done.

Further, the PJ reduced Counsel's fee based on "block billing." Also, the PJ adjusted Counsel's statement of in-court time, as specifically envisioned by the local rules. Finally, referencing the local rules provisions for extensions beyond the presumed maximum fee for "exceptional circumstances," the PJ stated that she awarded an amount in excess of the presumed maximum, but that the additional $4,465 sought by Counsel would be excessive given budgetary constraints, and clearly not justified when looking at the case as a whole. No abuse of discretion is evident from these explanations.

**Conclusion**

In sum, we hold that in the interest of judicial economy we should retain appellate jurisdiction. Further, Counsel has a right of appeal, and the Fee Award is a final appealable order. The City is a permissible but not indispensable party to an appeal challenging the procedures which resulted in the Fee Award. We review for abuse of discretion, within the confines of the local rules.

In the absence of government compulsion, there is no prohibited "taking" from court-appointed counsel. Counsel was af-

forded all the process due under the local rules. Having voluntarily submitted to that process, Counsel cannot now be heard to complain that it is inadequate.

The PJ was responsible for explaining her decision in sufficient detail to allow for appellate review, but she was not required to explain her decision to Counsel's satisfaction, nor did she need to address every reason for every disallowance of every aspect of the fee request. Under the circumstances of the remanded PCRA petition, we discern no abuse of discretion or error of law in the entry of the Fee Award. Therefore, we affirm.

Judge LEAVITT dissents.

Judge COVEY did not participate in the decision in this case.

### ORDER

**AND NOW,** this 25th day of April, 2014, the Order dated November 7, 2012, awarding counsel fees to Daniel Silverman, is **AFFIRMED.**

### CONCURRING AND DISSENTING OPINION BY President Judge PELLEGRINI.

Counsel was appointed in 2006 by the then President Judge to represent a defendant convicted of homicide in a Post–Conviction Relief Act (PCRA)[1] proceeding and he claims that his request to be paid counsel fees incurred in preparing for an evidentiary hearing resulting from a successful appeal were unjustly reduced. I disagree with that portion of the majority opinion[2] that agrees with President Judge Dembe's comment that "until the court

signed an order awarding fees [Counsel] possessed nothing more than the hope [in the requested fee award]." I believe counsel is entitled to "payments that [were] necessary to provide fair compensation for representation" and before any requested fees can be reduced, counsel is entitled to notice and opportunity to be heard.

In Philadelphia, counsel fees are processed in accord with Philadelphia Criminal Rule 424 which provides that appointed counsel shall be compensated at $50.00 per hour for in-court time and $40.00 per hour for reasonable out-of-court time. Normally, compensation is limited to $4,000.00 where only one counsel has been assigned. However, the Rule does provide for payment in excess of that amount if time is reasonably expended:

> ... Payment in excess of the limits stated herein may only be made, if the Court to whom the application is made certifies to the President Judge that because of extraordinary circumstances set forth, **such additional payments are necessary to provide fair compensation for representation.** Any payment in excess of the above limits will be at the discretion of the President Judge....

Regarding the processing of payments, Philadelphia Criminal Rule 425 provides that the Deputy Court Administrator shall initially review the bill for mathematical calculation and bring unusual aspects to a reviewing judge. For homicide cases, the trial judge shall attach his recommendation to the President Judge. Philadelphia Criminal Rule 425(G)(1) provides the standards to determine appropriate compensation as follows:

---

**1.** 42 Pa.C.S. §§ 9541–9546.

**2.** I agree with the majority that the President Judge is acting as a court administrator in exercising her discretion regarding payment of services rendered by a court-appointed attorney giving us jurisdiction pursuant to Section 762(a)(4) of the Judicial Code, 42 Pa.C.S. § 762(a)(4). Counsel has a right to appeal and the Fee Award is a final appealable order.

In–Court time is that which counsel is actually engaged in Court representing the defendant in the assigned case in a judicial proceeding. Out–of–Court time is all other time reasonably expended in the representation of the defendant in the assigned case including time spent waiting in Court for the case to be reached. It is within the Judge's discretion to determine whether time is reasonably spent. The Court in determining reasonableness may consider whether the time spent was necessary or whether less time consuming alternatives existed.

The payment for services in this appeal for which Counsel is seeking reimbursement is that portion of his legal bill representing the time he spent preparing for and conducting an evidentiary hearing ordered by the Superior Court in 2008. The evidentiary hearing was postponed four times before it began, none of which was requested by the defense. The hearing began on July 21, 2009, and after the first day of the evidentiary hearing, the continued hearing was postponed ten times before the hearing resumed; again, none of those postponements were requested by the defense. Nonetheless, each postponement and new listing required Counsel to re-prepare his case. The evidentiary hearing transcript length is 640 pages. Ultimately, the trial court denied relief and an appeal of this denial is currently pending before the Superior Court.

For services rendered between December 2008 and November 2012, Counsel submitted a bill for 198.75 hours for out-of-court preparation and 20 hours for in-court services for a total fee submission of $11,137.50. Counsel prepared this bill as he had in the past with .25 billing increments. The bill was then approved by the Court of Common Pleas Counsel Fees Unit and then sent to then President Judge Dembe.

President Judge Dembe, without notice to Counsel or an opportunity to respond by the trial judge, reduced the fee from the amount request to $6,672.50 or $4,465.00 less than requested. After the appeal was taken, President Judge Dembe explained that while she did not question the quality of legal services rendered by Counsel, on remand of the PCRA litigation, no new legal issues were raised, and Counsel used the same expert witness he used in the initial PCRA proceeding. She also questioned Counsel's 15–minute billing increments for short clerical tasks performed such as telephone calls, correspondence and e-mails to various individuals. She also reduced Counsel's fee based on "block billing" which made it difficult for the President Judge to assess how much time he spent on each task. The President Judge also disallowed compensation for local travel time and for time spent photocopying documents. She simply found that "The total hours he claimed to have spent on the case were simply too high considering the work he already had done." (Tr. Ct., Slip Op., 4/18/13, at 4.) In conclusion, President Judge Dembe stated that her fee arrangement "allowed compensation for what would be a reasonable estimate of in court and out of court time in the instant case." (*Id.* at 4–5).

President Judge Dembe found, and the majority essentially agrees, albeit on a different basis, that there is no protected interest in having his fees paid and that Counsel "possessed nothing more than the hope" in having his fees approved. The majority instead finds that because the local rules do not provide a hearing, "Counsel does not claim that he has ever been granted, nor does he claim others have been given a hearing on fee requests. Having voluntarily submitted to a process

where hearings are not contemplated, Counsel implicitly agreed to the process and may not now be heard that the process is inadequate." Majority Opinion, p. 782.

I dissent from that portion of the majority opinion because, ignoring that he represents that he has been paid in the past, just because counsel accepts an appointment does not mean he or she has waived the ability to seek redress for the nonpayment of fees for time spent in the fair representation of his or her client. If that were so, then appointed counsel could not challenge if the appointing court decided not to pay any fees whatsoever. Unlike the majority, which essentially agrees with President Judge Dembe that, because if all that Counsel had in fees for work expended was a "hope" that he would be paid, the President Judge could deny appointed counsel fees for any reason, know or unknown, proper or improper, because no explanation has to be given and no redress could be sought.

Instead of a "hope" that counsel fees will be paid, I would hold that Counsel has a property right to fees for time spent "necessary to provide fair representation."

Because Counsel has a property right, due process demands that he be given "some sort of hearing" to determine whether the payments for time he expended are necessary for fair representation. That does not mean that appointed counsel are entitled to a full blown hearing to reduce counsel fees. All that is required before fees are reduced is that appointed counsel should be notified in writing of the reasons for the reduction giving reasons for the denial similar to those set forth in her opinion and Counsel be given an opportunity to respond in writing. The President Judge can then deny or grant the request for additional fees and provide additional written reasons for the denial if necessary. Our review from that determination would then be an abuse of discretion standard.[3]

Accordingly, I respectfully concur in part and dissent in part.

Judge LEAVITT joins in this concurring and dissenting opinion.

3. Philadelphia Criminal Rule 425(F)(2) establishes a procedure for the review of a counsel's request for a fee in excess of $4,000. It states, in relevant part, as follows:

> Where such a sum is requested in counsel's petition, the Trial Judge shall forward the petition to the Deputy Court Administrator for Fiscal Affairs for submission to the President Judge. The Trial Judge shall attach his recommendation to the petition and a brief statement in support thereof.

Phila.Crim.R. 425(F)(2) (emphasis added).

Accordingly, to evaluate the merits of a counsel's fee petition, the President Judge is expected to receive the recommendation of the trial judge who observed the petitioner's work. Presumably, that recommendation would be forwarded to counsel who could then respond and then the President Judge could resolve the matters on the papers before her and would give counsel the opportunity to be heard as to any reduction in the amount. If, notwithstanding the recommendation of the trial judge, the President Judge decided not to approve that amount, the procedure outlined above would have followed.

Here, the trial judge who presided over 99% of the PCRA proceedings on which Counsel worked for several years, left the bench just before the decision was rendered. Accordingly, the President Judge never received a recommendation and "brief statement in support thereof" from the trial judge on Counsel's petition. Given this deviation from the procedure required by Phila.Crim.R. 425(F)(2), for that reason alone, it was incumbent upon President Judge Dembe to give Counsel an opportunity to be heard before reducing his requested fee.